MANHATTAN INDUSTRIES, INC., Bayard Shirt Corporation, and Don Sophisticates, Inc., Plaintiffs-Appellees,

v.

SWEATER BEE BY BANFF, LTD., and Robert Belsky, Defendants-Appellants.

Nos. 1361, 1375, Dockets 80–7345, 80–7379.

United States Court of Appeals, Second Circuit.

Argued June 13, 1980.

Decided July 17, 1980.

Paul Fields, New York City (McAulay, Fields, Fisher, Goldstein & Nissen, New York City, of counsel), for plaintiffs-appellees.

Dennis Grossman, New York City (Neil S. Kramer, P. C., New York City, of counsel and Eileen King, Legal Asst., on the brief), for defendants-appellants.

Before LUMBARD and MANSFIELD, Circuit Judges, and MEHRTENS, District Judge.*

LUMBARD, Circuit Judge:

Sweater Bee by Banff, Ltd. and Robert Belsky (collectively "Sweater Bee") appeal from a judgment entered on April 11, 1980, in the Southern District of New York, Broderick, J., permanently enjoining it from further use of the trademark "Kimberly" on the women's apparel it manufactures and markets. Sweater Bee argues that the district court erred in finding that the appellees—Manhattan Industries, Inc., Bayard Shirt Corporation and Don Sophisticates, Inc.—have acquired the right of ownership in the "Kimberly" mark. We conclude that the district court's findings of fact are supported by the record, but we remand for the fashioning of an order allowing both appellants and appellees to use the "Kimberly" mark with such distinctions as the district court finds appropriate.

The "Kimberly" mark was owned as a registered trademark and used to identify high quality women's clothing by General Mills, Inc., until May 7, 1979. On that day, General Mills formally abandoned the mark.[1] In response to rumors circulating within the trade in March and April 1979 that General Mills intended to discontinue using the mark, executives at Don Sophisticates and at Sweater Bee sought to acquire this valuable mark directly from General Mills, but neither succeeded because General Mills, for reasons unimportant here, decided to abandon rather than sell the mark.[2]

Upon the mark's abandonment, a free-for-all ensued. The district court found that Don Sophisticates began shipping merchandise with labels bearing a "Kimberly" mark on May 9.[3] Even before May 9, Don Sophisticates had displayed to customers "Kimberly" clothing which it had purchased from a supplier in anticipation of General Mills' discontinuance of the mark. From May 7 until October, when the complaint was filed, Don Sophisticates shipped over $10,000 worth of merchandise bearing the "Kimberly" mark.

Sweater Bee began shipping merchandise with labels bearing a "Kimberly" mark on May 10, the day the mark's abandonment was reported in the trade newspaper, *Women's Wear Daily*. Sweater Bee's four shipments on that day went to four states and since then Sweater Bee has shipped over $130,000 worth of merchandise with labels bearing a "Kimberly" mark. Bayard Shirt

---

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Lumbard and Mansfield, who are in agreement on this opinion. Judge Mehrtens, United States Senior District Judge for the Southern District of Florida, sitting by designation, who heard the argument, unfortunately died on July 15, 1980. Prior to his death, Judge Mehrtens voted to reverse and remand the decision of the District Court and was in agreement with his colleagues on all issues in the case. He did not have the opportunity, however, to see this opinion prior to his death.

1. General Mills signed Surrenders of Cancellation of its "Kimberly" marks on May 3. The letter transmitting the surrenders to the United States Patent and Trademark Office was dated May 7.

2. Although the record does not show General Mills' reason for abandoning the mark, counsel suggested at oral argument, in answer to the court's question, that the abandonment might have been for tax purposes.

3. The evidence shows that Don Sophisticates had begun shipping merchandise with labels bearing a "Kimberly" mark on May 7, making one shipment on that day, five on May 8, and one more on both May 10 and 14. These shipments went to five states. We consider it immaterial in this case whether Don Sophisticates began its shipments on May 7 or 9.

entered the race on May 11. By an assignment executed on June 29, Bayard Shirt and its parent company, Manhattan Industries, received all of Don Sophisticates' rights to the mark. By mid-September, Bayard Shirt had shipped over $45,000 worth of merchandise with labels bearing a "Kimberly" mark, and had spent over $9,000 in advertising and promoting its "Kimberly" line. Don Sophisticates, Sweater Bee and Bayard Shirt all applied to the United States Patent and Trademark Office for the registration of the mark.

Appellees brought this action under the Lanham Act, 15 U.S.C. § 1125(a),[4] claiming the trademark right to the mark by virtue of prior and continuous use and seeking, in addition to an injunction against Sweater Bee's further use of the mark, an accounting of profits derived from the alleged infringement, damages, and costs. Sweater Bee counterclaimed on similar grounds and sought similar relief. Both parties claimed an exclusive, nationwide right to use the mark. The district court, after receiving the parties' affidavits and documents and hearing arguments, concluded that Don Sophisticates, and by assignment Bayard Shirt and Manhattan Industries, had acquired the sole right to the mark by virtue of its prior use. However, in light of the evenly balanced equities, the district court denied appellees' request for an accounting, damages, and costs. Pending this expedited appeal, we stayed the district court's order that Sweater Bee destroy its "Kimberly" labels.

The record supports the district court's findings of fact whether we apply the clearly erroneous standard or review *de novo* the affidavits and documents which wholly comprise the evidence in the record. *U. S. Philips v. National Micronetics, Inc.*, 550 F.2d 716, 719 (2d Cir.), *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 131 (1977). When General Mills abandoned its mark, Don Sophisticates and Sweater Bee "were equally free to attempt to capture the mark to their own use." *Sutton Cosmetics (P.R.) v. Lander Co.*, 455 F.2d 285, 288 (2d Cir. 1972). Don Sophisticates won the race, for it was the first to ship merchandise with labels bearing a "Kimberly" mark after the abandonment, and it did so with the intent of acquiring the mark. Accordingly, Don Sophisticates would ordinarily have "the right to use the mark unadorned," *id.*, and Bayard Shirt and Manhattan Industries, as its assignees, would receive that right, *id.*, *Glamorene Products Corp. v. Procter & Gamble Co.*, 538 F.2d 894, 895 (C.C.P.A. 1976). However, in light of the significant shipments and investment by Sweater Bee, we do not believe that Don Sophisticates' slight priority in time justifies awarding to the appellees the exclusive, nationwide right to the "Kimberly" mark. We have previously stated that "the concept of priority in the law of trademarks is applied 'not in its calendar sense' but on the basis of 'the equities involved.'" *Chandon Champagne Corp. v. San Marino Wine Corp.*, 355 F.2d 531, 534 (2d Cir. 1964). *See also* 3 Callmann, *Unfair Competition, Trademarks and Monopolies*, § 76.3(a), at 302 (3d Ed.) ("Although adherence to the principle of priority has the advantage of temporal consistency, if it is applied as the dispositive test to resolve a trademark conflict, it might often result in injustice"). Given the evenly balanced equities in this case, it would be inequitable to allow only the appellees to use the "Kimberly" mark. Sweater Bee has proved "that it entered the market sufficiently early to be equally entitled with

---

4. This reads:

    Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation or origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

[appellees] to the use of the ['Kimberly'] mark. In such case, to protect the public, each company [will] have to differentiate its product from that of the other company and perhaps also from the original ['Kimberly'] mark." *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir. 1972).

One of the purposes of the Lanham Act is to prevent confusion among the public as to the source of goods. *See McGregor-Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1130 (2d Cir. 1979); *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). We have recognized, however, that the likelihood of confusion may decrease as the sophistication of the relevant purchasers increases. "The greater the value of an article the more careful the typical consumer can be expected to be; the average purchaser of an automobile will no doubt devote more attention to examining the different products and determining their manufacturer or source than will the average purchaser of a ball of twine." *McGregor-Doniger, Inc. v. Drizzle Inc., supra*, 599 F.2d at 1137. No doubt the parties can create and present to the district court sufficiently distinct labels bearing the "Kimberly" mark so that the purchasers of high quality women's clothing can distinguish appellees' "Kimberly" goods from appellant's. We therefore remand to the district court for the fashioning of an appropriate order not inconsistent with this opinion.

Reversed and remanded.