**SWEATER BEE BY BANFF, LTD.,**
**Plaintiff-Appellant,**

v.

**MANHATTAN INDUSTRIES, INC. and Bayard Shirt Corporation, Defendants-Appellees, and**

**Don Sophisticates, Inc. and Herbert Rounick, Defendants.**

**No. 477, Docket 84–7755.**

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1984.

Decided Feb. 6, 1985.

458

Dennis Grossman, New York City (Eileen King, Neil S. Kramer, New York City, of counsel), for plaintiff-appellant.

Thomas J. Sweeney, III, New York City (Cynthia A. Feigin, Davis, Markel, Dwyer & Edwards, Paul Fields, McAulay, Fields, Fisher, Goldstein & Nissen, New York City, of counsel), for defendants-appellees.

Before KAUFMAN, OAKES and NEWMAN, Circuit Judges.

OAKES, Circuit Judge:

Sweater Bee by Banff, Ltd. ("Sweater Bee"), and the Manhattan Industries, Inc., defendants ("Manhattan") have been in litigation over the trademark "Kimberly" on women's apparel practically since the day that the former owner of that mark formally abandoned it. The litigation first reached this court in *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628 (2d Cir.1980). There the court gave both sides the right to the use of the Kimberly mark, provided that the labels were sufficiently distinct so as to permit purchasers of high quality women's clothing to distinguish Manhattan's Kimberly goods from Sweater Bee's Kimberly goods. After remand, the parties entered into a consent order incorporated into a judgment of the United States District Court for the Southern District of New York, Vincent L. Broderick, Judge, (the "consent judgment"). Under the consent judgment, each of the parties obtained the right to use the Kimberly trademark or tradename in connection with the sale, distribution, and advertising of women's wearing apparel and all advertising material, brochures, labels, envelopes, business cards, and the like, but only when accompanied by a source reference, which "shall include the word 'by' immediately followed by the name, tradename or recognizable abbreviated name of the source," e.g., "Kimberly by Sweater Bee," "Kimberly by Manhattan." The consent judgment provided that "[a]ll disputes under or arising out of this judgment ... shall be resolved by an arbitration panel whose determination shall be final and binding." However, each party was nevertheless entitled to apply to the district court for the enforcement of any provision of the judgment as well as for the enforcement of any decision of an arbitration panel.

Alleging that Manhattan had procured its concurrent rights of ownership in the Kimberly trademark and tradename by perjury and fraud (which fraud became apparent after the prior appeal was determined), and that, notwithstanding the consent judg-

ment, Manhattan had in numerous respects violated the source-reference requirements of the consent judgment, Sweater Bee filed a complaint in federal district court on June 26, 1981, amended on March 24, 1982. The amended complaint alleged seventeen antitrust claims, four false-designation-of-origin claims under 15 U.S.C. § 1125(a) (1982), two federal common law claims, several pendent state law claims, and a claim for conditional vacatur of certain findings of fact concerning Don Sophisticates [1] in the trademark action. On April 27, 1982, Manhattan filed a motion under Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint for failure to state a claim for relief, for failure to satisfy the pleading requirements of the Federal Rules of Civil Procedure, for plaintiff's lack of standing, and because the claims were barred by res judicata and Fed.R.Civ.P. 60(b). The motion to dismiss was denied by order dated October 18, 1982, in all respects except as to the following claims: Claims 22 and 23, which were based on federal common law; so much of Claim 25 as pleads an action in interference with contract; so much of Claim 26 as pleads an action in abuse of process; and all of Claim 28, which would have vacated certain findings of fact in the trademark action. Claims 5, 10, 15, 21, and so much of Claim 25 as pleads a cause of action in prima facie tort were voluntarily withdrawn by Sweater Bee, and the court dismissed them as well. The court denied Manhattan's motion for reargument of the denial of its motion to dismiss on December 1, 1983.

On December 16, 1983, Sweater Bee filed a motion for a judgment of criminal contempt against Manhattan; for leave to file a second amended complaint that would add additional source-reference allegations, a claim for civil contempt, and a claim for RICO violations; and for partial summary judgment on the civil contempt claim. On December 30, 1983, Manhattan served its answer to the first amended complaint and raised certain counterclaims. The seventh defense of the answer was that Sweater

Bee's claims relating to Manhattan's conduct subsequent to the completion of the prior trademark litigation could not be brought because the judgment provided for arbitration of "[a]ll disputes under or arising out of this judgment," making all alleged violations of the judgment subject to arbitration. In a letter to Judge Broderick dated January 20, 1984, Manhattan enclosed a notice of intent to arbitrate, pursuant to the consent judgment which followed on remand from *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd., supra,* and to seek a stay pending arbitration of all source-reference claims made in the first amended complaint and the proposed second amended complaint. Manhattan subsequently filed a notice of cross-motion seeking arbitration and a stay pending arbitration on June 26, 1983.

On August 23, 1984, the district court granted Manhattan's cross-motion in part, compelling arbitration and staying plaintiff's source-reference claims as alleged in Counts 16 through 20, 24, 25, and 27 of the proposed second amended complaint. The court held that Sweater Bee's civil contempt claim was more appropriately treated as an application under the previous action, *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd., supra,* over which the court retained jurisdiction. Consequently, the court denied Sweater Bee's motions for leave to add the civil contempt claim to the proposed second amended complaint and for partial summary judgment as to liability for civil contempt. It placed Sweater Bee's motion for prompt trial of the charges of criminal contempt and for appointment of counsel to prosecute the charges of criminal contempt on suspense, and referred the issues relating to civil contempt to a master, each side to pay one-half the master's fees with the ultimate responsibility therefor to abide the event. Sweater Bee's motion to add RICO claims was denied, but its motion to add allegations of additional source-reference violations in the proposed second amended complaint was granted.

---

1. Neither Don Sophisticates, Inc., nor Herbert Rounick is involved in this appeal.

Only with the rather complex history of this multifaceted litigation thus outlined is it possible to state the primary question before this court on Sweater Bee's appeal: has Manhattan waived arbitration by its conduct in this litigation in seeking arbitration only after obtaining a ruling on its Rule 12(b)(6) motion to dismiss? We note parenthetically that neither party claims that the ruling that frames this issue is not appealable; we agree for reasons set out in the margin.[2] The other issue concerns whether the exercise of pendent appellate jurisdiction is appropriate in connection with the denial of Sweater Bee's motion to add civil contempt to the tort theories under which the source-reference allegations were being litigated, the denial of its motion for partial summary judgment as to liability for civil contempt, and the reference of the civil contempt claim to a master.

## DISCUSSION

The principal issue on appeal involves waiver of arbitration by virtue of the Rule 12(b)(6) motion to dismiss. Sweater Bee claims that during the process of this litigation Manhattan has continued and expanded its source-reference contempts, by using an illegal telephone listing, an illegal lobby directory listing, shipping some 13,000 pieces of clothing apparel under the trademark Kimberly without the source reference, and omitting the source reference from trade show catalogs, invoices and purchase orders, much of which Sweater Bee claims to have discovered after filing the first amended complaint. The argument is that, while Manhattan eventually complied with the source-reference injunction, it was only after three years and litigation-gunpoint compliance. And, it is argued, for some two years Manhattan vigorously litigated issues going to the merits without mentioning or seeking arbitration or reference to a master. Manhattan is said now to benefit not only from the res judicata effect of the partial dismissal it obtained but also in having litigated the applicability of the Lanham Act, 15 U.S.C. § 1125(a), several common law theories and punitive damages to the source-reference violations. Sweater Bee claims that two discovery motions, one of which was initiated by Manhattan, were also litigated,[3] resulting in Manhattan's production of approximately 6,000 pages of documents; and that Manhattan made at least five express representations on the record in the district court to

2. The order staying proceedings pending arbitration of the source-reference claims is appealable. The controlling principles are set forth in *Poriss v. Aaacon Auto Transp., Inc.,* 685 F.2d 56, 59 (2d Cir.1982), and sources cited therein. Orders compelling arbitration in an ongoing lawsuit are not appealable as final orders under 28 U.S.C. § 1291 (1982), because they do not fall within the "collateral order" exception of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Such orders are, however, appealable under 28 U.S.C. § 1292(a)(1) as interlocutory orders granting or refusing an injunction, under the following conditions: (1) the action in which the order was made must be an action at law, as defined before the fusion of law and equity; *and* (2) arbitration is sought to permit the prior determination of some equitable defense to that action. *See Diematic Mfg. Corp. v. Packaging Indus., Inc.,* 516 F.2d 975, 977–78 (2d Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); *Standard Chlorine, Inc. v. Leonard,* 384 F.2d 304, 308 (2d Cir.1967). Where the action presents claims seeking both equitable and legal relief, the arbitration order is not appealable, unless the equitable relief sought is "merely incidental." *See Aaacon,* 685 F.2d at 59; *Diematic,* 516 F.2d at 978–79. A defense that relies upon a prior agreement to arbitrate is an equitable defense. *See id.* at 977 n. 1 (following *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.,* 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935)).

In this case, Manhattan's motion for a stay pending arbitration of the source-reference claims is clearly one made in the course of an ongoing suit. The arbitrable source-reference claims are only some of the many claims Sweater Bee advances.

Furthermore, the two conditions required for appealability under 28 U.S.C. § 1292(a)(1) are met. First, the action in which the motion was made is an action at law—Sweater Bee is seeking only damages relief. Second, Manhattan's motion to compel arbitration is equitable in nature, since it relies upon the arbitration provision set forth in the consent judgment.

3. We note, however, that Manhattan denies moving for discovery, and that the record reflects only litigation pursuant to Sweater Bee's motion to compel discovery, filed May 11, 1983.

the continued availability of a judicial forum upon which Sweater Bee "relied." The argument is that, by obtaining a judicial decision on the merits before seeking arbitration, a party is allowed two forums; a defendant failing to persuade a court that a plaintiff has not stated a claim on which relief can be granted would in effect be given a second chance in another forum. *See Jones Motor Co. v. Chauffeurs, Local Union No. 633*, 671 F.2d 38, 44 (1st Cir.) (waiver established as matter of law where defendant answers complaint, engages in considerable discovery, files motion for summary judgment, and waits until court decides sua sponte that matter should be referred to arbitration), *cert. denied*, 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982).

■ The rule of this circuit, like that in *Jones*, is that the litigation of substantial issues going to the merits may constitute a waiver of arbitration. *See Demsey & Associates, Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1017–18 (2d Cir.1972) (failure to seek stay pending arbitration until after judicial trial on the merits amounts to waiver); *see also Weight Watchers, Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1057, 1058–62 (E.D.N.Y.1975) (defendant's motion for summary judgment and failure to mention or request arbitration for two years is waiver of arbitration).

Manhattan contends, on the other hand, that no waiver can ordinarily be found where a party raises arbitration in its answer and moves promptly for a stay. Concededly, it did so here, even though over two years elapsed from the initial time of the complaint to the filing of the answer, with all the accompanying preliminary procedural moves having been made by both parties. In *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1068 (2d Cir.1972), this court held that it was not a waiver—indeed it was "just the opposite" with respect to a defendant who not only asserted the arbitration clause of the contract in his answer as a defense but who additionally commenced an action in another federal court asserting a right to arbitration and injunctive relief. In *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir. 1968), the court said that

[a]s an abstract exercise in logic it may appear that it is inconsistent for a party to participate in a lawsuit for breach of a contract, and later to ask the court to stay that litigation pending arbitration. Yet the law is clear that such participation, standing alone, does not constitute a waiver.

*Id.* at 696 (citations omitted). In view of the "overriding federal policy favoring arbitration," waiver "is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party … cannot carry the day." *Id.* (footnotes and citation omitted); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). As the Court said in *Moses H. Cone Memorial Hospital*,

The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

460 U.S. at 24–25, 103 S.Ct. at 941–942. In *Carcich*, 389 F.2d at 694, a third-party defendant filed an answer to a counterclaim, the answer alleging that the claim should be submitted to arbitration in accordance with the terms of a charter party. This court found no waiver despite the fact that the party insisting on arbitration had not moved for a stay for nearly two years while the principal suit by the longshoreman against the shipowner was litigated. Judge Kaufman stated, *id.* at 696, that the case followed a fortiori from the then leading case in the circuit, *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir.1942), in which a libel had been filed for breach of a charter party and

the respondent's answer made no mention whatsoever of an arbitration clause in the charter party but contended instead that the respondent was not bound because the charter party had been improperly executed. A pretrial order had been filed, and it was not until the respondent sought to amend its answer when the case was already on the Ready Day Calendar that the first mention of arbitration came. This court held, in an exhaustive opinion by Judge Jerome Frank, that an alternative pleading in the answer, made by amendment thereto, that there should be a stay pending arbitration, did not constitute waiver or, as Judge Frank put it more precisely, "repudiation" of the agreement to arbitrate. *Id.* at 988–92. The case at bar also follows a fortiori from *Kulukundis*, its time element being similar to *Carcich*.

Two other Second Circuit cases are particularly instructive. In *Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291 (2d Cir.1965), a case that Judge Friendly described as involving "a Pickwickian series of moves that has already accumulated more than two printed pages of docket entries without any approach to the merits," *id.* at 293, the respondent claimed waiver on the basis of libelant's mere filing of an action for damages on the contract, which contained the arbitration clause. The court held that "the earliest point at which such preclusion may be found is when the other party files an answer on the merits." *Id.* at 293. And in *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412–13 (2d Cir.1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), the court held that there was no waiver by a defendant where the answer filed demanded arbitration although no motion for a stay was made until some nine months later, during which time settlement was discussed and the defendant consented to an examination before trial of its president—an examination that was adjourned repeatedly—but during which time the plaintiff released otherwise unavailable information to the defendant and the defendant was permitted to test

the disputed goods. Referring again to *Kulukundis*, the court said that "considerably more significant intervening steps have not been regarded as amounting to a waiver," *id.* at 413, and distinguished cases, such as *American Locomotive Co. v. Chemical Research Corp.*, 171 F.2d 115 (6th Cir.1948), *cert. denied*, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074 (1949), where waiver has been found because the parties seeking arbitration generally had brought up the subject only after long delay or when the trial was near at hand. *See also Clar Productions, Ltd. v. Isram Motion Pictures Productions Services, Inc.*, 529 F.Supp. 381, 383 (S.D.N.Y.1982) (Pollack, J.) (no waiver though right to arbitration not raised until seven months after complaint was filed but before discovery or response on merits).

But Sweater Bee advances the proposition that the motion to dismiss was a motion to dismiss on the merits with a full res judicata bar, and as we held in *Teltronics Services, Inc. v. L M Ericsson Telecommunications, Inc.*, 642 F.2d 31 (2d Cir.), *cert. denied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981), " 'judgments under rule 12(b)(6) are on the merits, with *res judicata* effects.' " *Id.* at 34 (quoting *Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976)); *see also Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981) (dismissal under Rule 12(b)(6) is a judgment on merits); Fed.R.Civ.P. 41(b) ("Unless the court in its order for dismissal otherwise specifies," a Rule 12(b)(6) dismissal "operates as an adjudication upon the merits."). Manhattan's dismissal motion did in fact, Sweater Bee's argument runs, result in a partial dismissal with a res judicata bar on the plaintiff's claim for interference with contractual relations. Sweater Bee also points to the applicability of the Lanham Act and New York common law under the district court's ruling in its favor, thereby entitling it to a full accounting upon a showing of willfulness. *See W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d

Cir.1970). Sweater Bee further argues that the district court determined the applicability of the source-reference injunction in the consent judgment by sustaining Sweater Bee's allegations that the injunction applied to the various media on which Sweater Bee alleged the defendants' contempts were made. Finally, Sweater Bee adds that, in this case, the district court necessarily addressed important factual issues in its memorandum order because its complaint contained documentary exhibits which became part of the complaint for all purposes under Fed.R.Civ.P. 10(c). *Cf. Tenopir v. State Farm Mutual Co.*, 403 F.2d 533, 535 (9th Cir.1968) (substance of insurance policy annexed to complaint required dismissal under Rule 12(b)(6)); the district court's sustaining of the source-reference claims is thus said necessarily to have sustained the factual sufficiency of the plaintiff's exhibits.

■ Manhattan, however, argues that of the twenty-eight claims in Sweater Bee's amended complaint most were nonarbitrable, being either federal antitrust claims or claims related to allegations of fraud in the previous trademark action, or both. In fact, Sweater Bee's amended complaint states seventeen counts alleging federal antitrust claims and nineteen claims alleging fraud in the previous trademark action. Five of the eight claims ultimately referred to arbitration and stayed are nonarbitrable antitrust claims containing arbitrable source-reference allegations underlying the claims. Only one arbitrable claim—alleging interference with contractual relations—was dismissed by the court as a result of Manhattan's motion to dismiss. Plainly, the portions of the motion addressed to nonarbitrable claims do not constitute a waiver. *See American Broadcasting Companies v. Ali*, 434 F.Supp. 1108, 1112 (S.D.N.Y.), *aff'd*, 573 F.2d 1287 (2d Cir.1977). And where, as here, a plaintiff files an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims, he should not be altogether surprised that a defendant takes the protective step of filing a motion to dismiss, specifically permitted by Fed.R.Civ.P. 12(b) to be filed before answer.

■ Moreover, the rule of *Carcich* is that delay in seeking arbitration does not constitute a waiver absent prejudice to the opposing party. 389 F.2d at 696; *see also ITT World Communications, Inc. v. Communications Workers*, 422 F.2d 77, 82–83 (2d Cir.1970) (*Carcich* rule applies to labor as well as commercial disputes); *Lubrizol International, S.A. v. M/V Stolt Argobay*, 562 F.Supp. 565, 572–73 (S.D.N.Y.1982) (*Carcich* rule requires arbitration even though defendant moved for summary judgment). The district court's rulings on the Rule 12(b)(6) motion favorable to Sweater Bee surely cannot be to Sweater Bee's disadvantage. The only ruling on the merits of an arbitrable claim favorable to Manhattan was that dismissing the claim alleging interference with contractual relations. But this claim was at best frivolous; Sweater Bee knew or should have known that such a claim requires an actual and existing contract and knowledge of that contract, neither of which conditions were alleged here. Nor are we persuaded by Sweater Bee's argument that arbitration would be prejudicial because an award of punitive damages would be foreclosed that might otherwise be forthcoming from the district court; in at least this respect, Sweater Bee is no worse off proceeding now to arbitration than had Manhattan moved for arbitration immediately after being served with the amended complaint. We have already held that there cannot be prejudice stemming merely from delay. *ITT World Communications, supra; Carcich, supra; Kulukundis, supra.* And here the only delay was the time necessary for the Rule 12(b)(6) original motion and reargument motion to be made, briefed, and decided.

In a somewhat strained effort, Sweater Bee seeks to put this case into the framework of *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 712 F.2d 270 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983), where, it is true, the

plaintiff was held to have sustained its "heavy burden," *id.* at 273, to prove waiver. There, the plaintiff repeatedly offered to the other party "to have the matter resolved by litigation or arbitration whenever you so choose," *id.* at 271, and the opposing party chose to litigate, filing an answer and counterclaim soon after a stay was lifted, followed by extensive pretrial activities with the expenditure of considerable time and money on extensive discovery, document production, and briefing on the merits of the principal question involved, namely the amount of royalties required. The waiving party was said to have acquiesced in the other's choice of litigation and therefore could not "have it both ways." *Id.* at 273. Such is not the case here, though during litigation of the discovery motion in May, 1983, Manhattan is said to have made five representations on the record that the plaintiff could prosecute and take discovery on the Lanham Act and common law claims after resolution of the motions for reargument of the dismissal motions. These are set out in the margin;[4] however, as the italicized material suggests, some are conditional statements designed to assure the court that evidence was not being lost, while others quite properly and prudently suggest that discovery be delayed in a wide-ranging case until the Rule 12(b)(6) motion is fully decided. This case is thus dramatically different from the unconditional offer to "arbitrate or litigate" in the *Ohio-Sealy* case. Beyond this, Sweater Bee not only will be able to use in the arbitration whatever discovery it has, but will be granted appropriate discovery in the contempt proceedings that have been referred to the master, which so far as

appears may also be used in the arbitration. This surely cannot amount to prejudice.

Sweater Bee suggests in its reply brief, however, that while there may have been no prejudice in fact there is prejudice in law in Manhattan's being able to "forum shop" after the district court resolved issues going to the merits of Sweater Bee's claims. Prejudice is said to have occurred somehow by virtue of the district court's dismissal of the claim for interference with contractual relations (whether the ruling was right or wrong) and in Manhattan's mere attempt to transfer the source-reference claims to a second forum, and this prejudice is said to affect the claims that were not dismissed. Substantial policy considerations are said to support this "forum shopping" or "forum skipping" claim of prejudice; if able to file a Rule 12(b)(6) motion for dismissal and later file a request for arbitration, a defendant would deprive the plaintiff of notice of the defendant's arbitration intentions so that, for example, a plaintiff could not himself request arbitration prior to a judicial resolution of the dismissal motion. A defendant would in effect be able to procure dismissal on the merits in two separate forums while a plaintiff could prevail in only one. We note, however, that this is not exactly what can be called severe prejudice, since presumably all that the plaintiff could do on learning of defendant's intention to seek arbitration at the time defendant filed a motion to dismiss under Rule 12(b)(6) is himself seek the arbitration that Sweater Bee now wishes to avoid. At that time, both parties could only speculate not only

4. The five are as follows (emphasis added):

1. The relevant documentation and the persons with the knowledge of the facts will be available to Plaintiff during discovery, *if necessary*—but only after Defendants' pending motions for reargument [of their dismissal motion] have been decided by the Court.

2. Plaintiff has offered no convincing reason why discovery in this matter should not await the Court's ruling on our [the defendants'] motion for reargument.

3. [A]s the affidavits submitted with this memorandum show, we have identified certain persons knowledgeable about the facts and those persons will be available to Plaintiff for deposition *at an appropriate time and place.*

4. [Plaintiff] offers no valid reason … why all parties' discovery should not await resolution of the motions for reargument.

5. That's all we [the defendants Manhattan-Bayard] are asking the Court to withhold at the present time, because otherwise it's going to mean piecemeal discovery now *and again later.*

as to how the court might resolve the claims,[5] but also as to whether the court will choose to resolve any claims at all. The "prejudice" is highly speculative, if not illusory.

But with a neverending supply of arrows from its quiver, Sweater Bee advanced at oral argument the position that an affirmance of the district court's order compelling arbitration will disserve judicial economy, surely a rather surprising thought for those who have followed the arbitration versus litigation arguments of the last several decades. First, it is said that an affirmance will encourage unnecessary Rule 12(b)(6) motions in otherwise arbitrable cases. We see no signs of this, nor do we think it will take place. The case law is broadly and clearly to the effect that on a Rule 12(b)(6) motion, where matters outside the pleading are *not* presented to the court, the complaint must be construed in the most favorable light to the plaintiff. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Jones-Bey v. Caso*, 535 F.2d 1360, 1362 (2d Cir.1976). Thus, the most to be gained from such a motion is dismissal of a totally needless and unmeritorious claim. And if matters going outside the pleadings are presented to and not excluded by the court, the motion is, of course, treated as one for summary judgment and disposed of as provided in Rule 56, at which point the effect would be to preclude any arbitration of the issue by virtue of waiver. *See Weight Watchers*, 398 F.Supp. at 1061. As the Advisory Committee's notes state, Rule 12(b)(6) is, after all, "substantially the same as the old demurrer for failure of a pleading to state a cause of action." Fed. R.Civ.P. 12 advisory committee note. A defendant, moreover, runs the risk that, even absent the initial submission of extraneous material, a district court may label the motion as one for summary judgment and dispose of it as such. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 607–08 (1969).

This point also disposes of a second argument—that upholding the district court will breed unnecessary litigation on the question whether a Rule 12(b)(6) motion should be treated as a Rule 56 motion pursuant to the last sentence of Rule 12(b). The defendant who files the Rule 12(b)(6) motion takes the risk.

Third, an affirmance here will not unduly burden the arbitration process with the task of interpreting and applying a district court's denial of a Rule 12(b)(6) motion. Such a task is currently borne whenever a district court decides a dismissal motion made simultaneously with an arbitration motion. The fact that a district court might have the option to refer a matter immediately to arbitration does not mean that it must exercise that option. *See, e.g., Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981) (where nonarbitrable issues substantially permeate entire case, district court has discretion to stay arbitration pending judicial resolution of nonarbitrable issues); *Zemaitis v. Merrill Lynch, Pierce, Fenner & Smith*, 583 F.Supp. 1552, 1554–55 (W.D.N.Y.1984) (where factual issues exist pertinent to both arbitrable and nonarbitrable claims, stay of arbitration pending adjudication of nonarbitrable claims is appropriate). Moreover, it is possible that by eliminating some of the claims as a matter of law the role of the arbitrator might be made more simple, because the arbitrator would then be able to concentrate or focus solely on claims that have facial merit.

Finally, it is said, not without some justification, that an affirmance here will create opportunities for additional litigation relative to an arbitrator's compliance with a district court's ruling on a Rule 12(b)(6) motion. For example, Sweater Bee contends, a district court would confront the dilemma of having to examine the arbitral record to determine compliance with its Rule 12(b)(6) decision, thereby either under-

---

**5.** Defendant, for example, cannot be assured that his motion will not result in waiver of arbitration, *see infra* at 465.

mining the finality of arbitral decisions or, by enforcing the arbitrator's award automatically, potentially undermining its own Rule 12(b)(6) ruling. To the extent that either would occur, however, the problem is essentially the same in any matter referred to arbitration where the arbitral decree is thereafter litigated. Under present law, we are frequently required to adjudicate whether an arbitration award was based on a "manifest disregard of the law" when an award is sought to be vacated. *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1213–14 (2d Cir.1972); *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967).

Ultimately, the difficulty with Sweater Bee's position stems largely, we think, from the complexity of its complaint. Sweater Bee would have us decide the case as if all that it were complaining about were "source-reference claims." But, of course, that is not the situation here. Sweater Bee's principal claims that do not relate to source-reference claims are many, various, and serious. The motion to stay for arbitration has no effect on them; they remain outstanding, untouched by the reference to arbitration of the source-reference claims. Confronted with such a complaint alleging almost thirty claims for relief, the defendant not surprisingly filed a motion to dismiss. Not a single case cited serves to have put Manhattan on notice that a defendant's failure to file a request for arbitration before answering would constitute a waiver of his conceded right to obtain arbitration in connection with the arbitrable claims advanced. By filing the motion, especially where the complaint had exhibits and other outside matters attached to and incorporated in it, the defendant ran the risk that it would be treated as a Rule 56 motion and in turn that it might not only lose on the merits but also lose the right thereafter to seek arbitration. In this case, Manhattan assumed the risk and avoided its hazards, but was almost totally unsuccessful on its motion to dismiss. Manhattan obtains no unfair advantage, therefore, from our finding that the assertion of the defense of arbitrability in its answer was all the notice to which Sweater Bee was entitled in view of its numerous and overlapping claims. Moreover, in view of those claims, whatever delay occurred from the time the complaint was filed to Manhattan's assertion of the arbitration defense in its answer was as much the fault of Sweater Bee as of Manhattan. We have little doubt that a district judge can recognize the tactics of delay or harassment that operate to prejudice the opposing party and to cause him expense, thereby justifying a finding of waiver. Finally, the party seeking such a finding—that his opponent has waived a conceded right to arbitration—has a "heavy burden" that we do not think Sweater Bee has met in the instant case.

The other claims made by Sweater Bee on appeal all would require the exercise of pendent appellate jurisdiction in the interests of judicial economy. None of them, however, are related to the primary appealable issue on the subject of waiver of arbitration. It is well settled in this circuit that pendent appellate jurisdiction is properly invoked only where "review of the appealable order will involve consideration of factors relevant to the otherwise nonappealable order[s]." *General Motors Corp. v. City of New York*, 501 F.2d 639, 648 (2d Cir.1974). Accordingly, we grant Manhattan's motion for partial dismissal of the appeal as to the matters sought to be reviewed by pendent appellate jurisdiction.

Judgment affirmed in part; appeal dismissed in part. Costs to appellees.