**MARINE TRANSPORT LINES, INC., Plaintiff,**

v.

**INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS, Defendant.**

**No. 85 Civ. 1360 (EW).**

United States District Court, S.D. New York.

May 22, 1985.

Morgan, Lewis & Bockius, Washington, D.C., Morgan Lewis & Bockius, New York City, for plaintiff; Thomas K. Wotring, Eric A. Sisco, D. Michael Underhill, John F. Lauro, of counsel.

Burton M. Epstein, c/o Steinberg & Tugendrajch, P.C., Vladeck, Waldman, Elias & Engelhard, P.C., New York City, Bredhoff & Kaiser, Washington, D.C., for defendant; Seymour M. Waldman, Daniel Engelstein, Michael H. Gottesman, George H. Cohen, Robert M. Weinberg, James D. Holzhauer, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Marine Transport Lines, Inc. ("Marine Transport" or "the Employer"), instituted this action for a declaratory judgment that its collective bargaining agreement with defendant, International Organization of Masters, Mates & Pilots, AFL–CIO ("the Union"), terminated at midnight June 15, 1984. The central issue raised by plaintiff's claim is the effect of a letter sent by the Union to Marine Transport on April 8, 1984. The Employer claims that, pursuant to the terms of its agreement with the Union, the April 8 letter prevented the automatic renewal of the collective bargaining agreement, resulting in its termination on June 15, 1984. The Union contends that the letter had no effect upon the automatic renewal provision and, hence, the collective bargaining agreement continued in full force and effect after June 15.

The Union interposed three counterclaims addressed to the central question whether or not the agreement terminated on June 15. However, in its fourth counterclaim, the Union alleges a separate claim that the Employer breached the collective bargaining agreement both *before* and *after* June 15. Generally, this counterclaim alleges that Marine Transport engaged in conduct violating an express provision of that agreement which prohibits the Employer from influencing members to withdraw from the Union, interfering with internal Union affairs, and undermining the status of the Union as sole bargaining representative for the Employer's licensed deck officers. More specifically, it is alleged that prior to June 15, Marine Transport "prepared a letter to all ... its ... officers announcing that it would not" renew the collective bargaining agreement, offering reduced wages and terms and conditions of employment, and encouraging Union members to withdraw from the Union by, among other things, promising to pay any fines imposed by the Union for withdrawal. Defendant alleges that such conduct violated not only Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, but, as alleged in its amended counterclaim, also violated state tort and contract law.

Marine Transport now moves to dismiss the Union's fourth counterclaim upon the ground that the Union has not exhausted its contractual remedies. The Employer contends that the Union has failed to invoke the arbitral process provided for in the collective bargaining agreement for resolution of claimed breaches of that agreement occurring prior to June 15. However, as for acts alleged in the fourth counterclaim to have occurred after June 15, the Employer, based upon its contention that no agreement existed after that date, further argues it is not required to arbitrate any grievance arising after June 15.

The Union concedes that prior to June 15 it was bound by the terms of the collective bargaining agreement then in force, including its arbitration provisions, and that the claimed breach of the collective bargaining agreement by Marine Transport prior to June 15, as contained in its fourth counterclaim, is subject to arbitration. However, in resisting the Employer's motion to dismiss, the Union contends that Marine Transport has waived its right to insist upon arbitration by initiating this litigation

as a means of resolving their dispute as to the contract termination date—a dispute which the Union contends is arbitrable.[1]

## DISCUSSION

Given "the importance of arbitration as an instrument of federal policy" for resolving labor disputes,[2] waiver of the right to invoke arbitral processes is not to be "lightly inferred."[3] Defendant bears a "heavy burden" in seeking a determination that its opponent has waived a conceded right to arbitration.[4] It must show not only that Marine Transport's resort to the courts evidences an intent to relinquish the right to arbitration,[5] but also that such conduct has been to its prejudice.[6]

Upon the facts presented, defendant has not borne its burden to show a waiver. Marine Transport's resort to the courts does not clearly evidence an intent to relinquish its contractual right to arbitrate claimed breaches of the collective bargaining agreement arising prior to June 15 during the life of the agreement. Marine Transport contends, with some support

which the defendant disputes,[7] that the commencement of this declaratory judgment action is not inconsistent with its insistence on arbitration of the alleged breaches prior to June 15, since the issue whether the April 1984 letter effected a termination of the existing agreement is a legal issue to be decided by the courts, not arbitrators, and that this litigation was commenced accordingly. However, even assuming, as the Union contends, that the Employer's termination claim is one to be resolved by the arbitrator and not by the courts, plaintiff's resort to the courts does not clearly evidence an intent to relinquish the right to arbitrate defendant's claims of breaches that are alleged to have occurred prior to June 15. The Union's waiver argument fails to recognize that plaintiff's termination claim does not put into dispute either the validity of the collective bargaining agreement *prior* to June 15, or that any issues arising thereunder are subject to the arbitral process. Plaintiff seeks a declaration that, *after* June 15, the agreement was no longer in force; it concedes,

1. The essence of this motion, as the parties appear to agree, is whether plaintiff has waived its right to rely upon the provisions of the collective bargaining agreement setting forth the grievance procedures for resolving disputes between the parties. To the extent that defendant has argued other grounds for excusing its failure to "exhaust" contractual grievance procedures, the Court finds them insufficient to justify allowing defendant to evade its contractual obligation to arbitrate.

2. *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 243, 90 S.Ct. 1583, 1588, 26 L.Ed.2d 199 (1970); *see Drake Bakeries, Inc. v. Local 50,* 370 U.S. 254, 260–63, 82 S.Ct. 1346, 1350–52, 8 L.Ed.2d 474 (1962).

3. *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 461 (2d Cir.1985) (quoting *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968) ).

4. *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 466 (2d Cir.1985).

5. *Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.,* 475 F.Supp. 1282, 1290 (E.D.N.Y.1979) ("[t]o constitute a waiver, a party's resort to the courts must evidence an intent to relinquish the right to arbitration") (quoting *Auxiliary Power Corp. v. Eckhardt & Co.,* 266 F.Supp. 1020, 1022 (S.D.

N.Y.1966) ); *see also Luckenbach Overseas Corp. v. Curran,* 398 F.2d 403, 405 n. 3 (2d Cir.1968).

6. *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968); *accord Sweater Bee by Banff v. Manhattan Indus., Inc.,* 754 F.2d 457, 461 (2d Cir.1985); *see ITT World Communications, Inc. v. Communications Workers of America,* 422 F.2d 77, 82–83 (2d Cir.1970) (*Carcich* rule applies to labor as well as commercial disputes).

7. Plaintiff has consistently maintained that under a decision in the Eastern District of Pennsylvania, where it brought its action, *Pullman, Inc. v. International Bhd. of Boilermakers,* 354 F.Supp. 496 (E.D.Pa.1972), the question whether a notice to modify a collective bargaining agreement is sufficient to terminate the collective bargaining agreement is a question for the court, not the arbitrator. However, defendant has cited to contrary authority, both in the Third Circuit, *see Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120,* 647 F.2d 372, 382–83 (3rd Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 46 (3rd Cir.1978), and in our Court of Appeals, *see, e.g., Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80,* 605 F.2d 1290, 1295–96 (2d Cir. 1979).

as does the defendant, that prior to that date the agreement remained in full force and effect, and that its arbitration provision must be honored for any claimed breaches arising thereunder. Since the initiation of this litigation is consistent with the existence of the collective bargaining agreement prior to June 15, it is equally consistent with plaintiff's reliance on the arbitration provisions of that agreement as to disputes arising prior to that date.[8]

Nevertheless, the Union insists that by the commencement of this action, the Employer has waived its right to arbitration since it brought suit and, then, changed its position and sought an arbitral forum. However, the Employer has never changed its position with respect to its *own* claim.[9] Rather, upon the assertion of *defendant's* counterclaims, it has made the instant motion seeking to enforce its conceded right under the contract to arbitrate disputes arising prior to June 15. It is important to note that with respect to the Union's counterclaims, plaintiff is in the position of a defendant.[10] To adopt the Union's argument here would require the Court to find that prior to the time the fourth counterclaim had even been asserted, plaintiff

waived its right to seek arbitration, though it has never disputed its contractual obligation to do so.

Even assuming that "[a]s an abstract exercise in logic it may appear ... inconsistent for a party to participate in a lawsuit ... and later to ask the court [to order arbitration] ... the law is clear that such participation, standing alone, does not constitute a waiver."[11] Prejudice must be shown.[12] However, defendant has not met its "heavy burden" to show prejudice. In the face of defendant's counterclaims, plaintiff did not delay. It filed a reply asserting its contention that defendant was required to exhaust contractual remedies and proceeded to bring on this motion in timely fashion.[13] Moreover, defendant has not offered any basis upon which this Court could conclude that there has been substantial litigation of either parties' claims which even implicitly may constitute a waiver by plaintiff of its right to resort to arbitration as to claims arising prior to June 15, 1984. The only judicial consideration of this case appears to have occurred in connection with the Union's successful motion to transfer the litigation from the

8. See Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir.1942) (no repudiation or waiver of right to arbitration where defendant had consistently claimed it was not bound by the charter party upon which plaintiff based its claims and then, upon the eve of trial, sought to amend its answer to seek a stay pending arbitration); *see also Drake Bakeries, Inc. v. Local 50*, 370 U.S. 254, 263 n. 10, 82 S.Ct. 1346, 1351 n. 10, 8 L.Ed.2d 474 (1962).

9. Cf. Laborers Health & Welfare Trust Fund v. Kaufman & Broad of Northern California, Inc., 707 F.2d 412, 417 (9th Cir.1983) (change in position by plaintiff as to the proper forum for its own claims); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 845 (2d Cir.1977) (same); *Morales Rivera v. Sea Land of Puerto Rico, Inc.*, 418 F.2d 725, 726 (1st Cir. 1969) (same); *Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291 (2d Cir.1965) (same).

10. See Reid Burton Construction, Inc. v. Carpenters Dist. Council of Southern Colorado, 614 F.2d 698, 702 (10th Cir.) (relevant factors include whether counterclaim filed), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980); *see*

also Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir.1942) (discussing *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318 (4th Cir.1938) ).

11. Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968).

12. Id.; accord Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir.1985); *see American Broadcasting Companies, Inc. v. Ali*, 434 F.Supp. 1108, 1112 (S.D.N.Y.), *aff'd without opinion*, 573 F.2d 1287 (2d Cir.1977).

13. The Union filed an answer to Marine Transport's complaint, accompanied by four counterclaims, on December 6, 1984. On December 31, Marine Transport replied to the counterclaims, explicitly asserting an affirmative defense that the Union had not exhausted its contractual remedies. On January 2, 1985, the Union's motion to transfer the action was granted. On January 9, 1985, Marine Transport filed this motion to dismiss the Union's fourth counterclaim. Defendant's Memorandum in Opposition at 1; Plaintiff's Supplemental Memorandum in Support at 2.

Eastern District of Pennsylvania to this Court.[14]

Finally, any prejudice defendant claims to have resulted from its "unwilling" appearance in this action could have been avoided if defendant were to have enforced what it now claims to have been its right to bring plaintiff's termination claim to arbitration. Instead, defendant ignored any claimed breach by plaintiff of the arbitration provisions of the collective bargaining agreement and, in fact, affirmatively invoked the resources of the Court in asserting counterclaims. Having ignored its alleged right to have plaintiff's claim arbitrated, the Union may not now rely upon the purported arbitrability of that claim to justify a finding of waiver with respect to the separate claim it initiated and it now seeks to have adjudicated rather than sent to arbitration.

■ Accordingly, the Court finds that plaintiff has not waived its right to insist that defendant exhaust its contractual remedies with respect to that portion of defendant's fourth counterclaim based upon the Employer's alleged breach of the agreement prior to June 15, 1984. However, defendant contends that, even if plaintiff has not waived its right to arbitration, the amended counterclaims based on state law must remain before the Court, for no agreement was made to arbitrate such claims. Plaintiff responds that defendant's state law claim for intentional interference by the Employer with the contractual relations between the Union and its members is merely derivative of its basic contract claim and is therefore preempted by Section 301 of the LMRA.[15]

In response to plaintiff's motion to dismiss, the Union amended its fourth counterclaim for the purpose of adding a claim based on state tort law. The amendment, however, simply attaches a different legal label to what is clearly a claim for breach of the collective bargaining agreement, a claim cognizable under Section 301 of the LMRA and undoubtedly governed by federal law. No new conduct has been alleged in support of the tort claim. Only conclusory allegations that the same conduct allegedly breaching the collective bargaining agreement also constitutes a state tort have been added.

■ The collective bargaining agreement provision the Union relies upon in support of its Section 301 claim prohibits the Employer from engaging in activities or assisting or encouraging others to engage in activities calculated to undermine the status of the Union as sole bargaining representative. It also prohibits the Employer from even attempting to influence or persuade any Union member to withdraw or to interfere with internal Union affairs. If, as alleged in the counterclaim, the Employer engaged in the proscribed conduct, it

---

14. *Cf. Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457 (2d Cir.1985) (no waiver where arbitration sought two years after complaint filed and after motion to dismiss partly granted); *Midwest Window Systems, Inc. v. Amcor Indus., Inc.,* 630 F.2d 535, 537 (7th Cir.1980) (waiver where party seeking arbitration brought related claim to judgment); *Gutor Int'l AG v. Raymond Packer Co.,* 493 F.2d 938, 945 (1st Cir.1974) (waiver as to defendant's counterclaims; plaintiff already moved for summary judgment); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir.1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960) (no waiver where motion for stay not made until nine months after right to arbitration asserted in answer); *Kulukundis Shipping Co. v. Amtorg Trading Corp.,* 126 F.2d 978 (2d Cir.1942) (no waiver where arbitration question first raised after pretrial order filed and case on ready trial calendar).

15. Defendant's fourth counterclaim also purports to state a claim for violation of state contract law. However, it is well-established that any claim for breach of the collective bargaining agreement is governed by federal law. *See Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Avco Corp. v. Aero Lodge No. 735,* 376 F.2d 337, 340 (6th Cir.1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1474 (9th Cir. 1984). Thus, while the Court's discussion focuses on defendant's tortious interference claim, its resolution of plaintiff's motion with respect to that claim is equally applicable to any purported claim based on state contract law that plaintiff breached the collective bargaining agreement prior to June 15, 1984.

was a clear breach of the contract. The fact that such conduct may give rise to a separate tort under state law does not serve to evade preemption of the claim under federal law. Defendant's "tortious interference" allegations add nothing to its basic factual claim.

In such circumstances, the Court finds that defendant's tortious interference claim is preempted by federal law.[16] To permit the defendant to avoid grievance and arbitration procedures merely by attaching a tort label to an arbitrable contract dispute would, as the Supreme Court recently stated in *Allis-Chalmers Corp. v. Lueck*,[17] "eviscerate a central tenet of federal labor-contract law." [18] It was precisely the need to maintain the effectiveness of arbitration that prompted the Court in *Lueck* to find that a derivative tort claim was preempted by federal law under Section 301 where the collective bargaining agreement imposed the same rights and obligations as would the derivative tort.[19] Similarly, here, the Court finds that to allow defendant to proceed with "this particular ... tort, as applied, would frustrate the federal labor-contract scheme established in § 301," [20] and accordingly finds it is preempted by federal law.

To the extent that defendant's fourth counterclaim is based on conduct arising during the conceded life of the agreement, i.e., prior to June 15, 1984, it is dismissed for failure to exhaust contractual remedies.[21] However, to the extent that it is based on conduct arising after that date, it will be stayed pending judicial determination whether the collective bargaining agreement remained in force after June 15, 1984. This will serve the interests of the parties, saving them the expense and time involved in litigating in two different forums, and likewise conserve judicial and legal resources. If plaintiff fails to prevail on its declaratory judgment claim, so that the contract was in existence after June 15, 1984, then all claims are subject to arbitration; if plaintiff prevails, then the claims after June 15, 1984 are beyond the reach of arbitration.

So ordered.

---

**16.** *See Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1474 (9th Cir.1984) ("The agreement provides the same or greater protection [as] state tort law"); *Alameda Room, Inc. v. Pitta,* 538 F.Supp. 1072, 1076 (S.D.N.Y.1982) (state law claim preempted where it "could have" been commenced on a federal law theory); *Gilliard v. New York Public Library System,* 597 F.Supp. 1069, 1079–80 (S.D.N.Y.1984) (tortious interference claim preempted).

**17.** —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

**18.** *Id.* at ——, 105 S.Ct. at 1914; *see id.* at ——, 105 S.Ct. at 1916 ("The requirements of § 301 as understood in *Lucas Flour* can not vary with the name appended to a particular cause of action").

**19.** *See id.* at ———–——, 105 S.Ct. at 1912–16.

**20.** *Id.* at ——, 105 S.Ct. at 1908.

**21.** *See id.* at ——, 105 S.Ct. at 1916 ("This complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement ..."); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *see also Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Dinger v. Anchor Motor Freight, Inc.,* 501 F.Supp. 64, 71–72 (S.D.N.Y.1980).