Dr. Thomas E. CHANDLER, Dr. Michael E. Allen, Dr. Clark Fullmer, Dr. Rodney W. Livingston, Dr. Garth L. Nelson, Dr. Gene M. Richards, Dr. Phillip H. Spencer, Dr. Clive C. Ingram, Dr. David B. Hincks, Dr. Aldean Washburn, and Dr. Paul R. Olsen, individually and on behalf of Members of the Utah Dental Association, Plaintiffs and Appellees,

v.

BLUE CROSS BLUE SHIELD OF UTAH, Massachusetts Mutual Life Insurance Company, a Massachusetts corporation, Gary D. Henderson, Steven G. Sholy, and Utah Dental Association, a Utah incorporated association, Defendants and Appellants.

No. 890540.

Supreme Court of Utah.

May 15, 1992.

Norman J. Younker, Michael L. Chidester, Salt Lake City, for plaintiffs and appellees.

Timothy C. Houpt, Salt Lake City, for Blue Cross Blue Shield.

Phillip S. Ferguson, Salt Lake City, for Massachusetts Mut. Life Ins. Co.

D. Gary Christian, Heinz J. Mahler, Salt Lake City, for Steven G. Sholy and Gary D. Henderson.

David G. Williams, Salt Lake City, for Utah Dental Ass'n.

HALL, Chief Justice:

Defendant Blue Cross Blue Shield of Utah appeals the denial of its motion to compel arbitration. We affirm.

The plaintiffs in this action are members of the Utah Dental Association ("UDA"). In November of 1987, plaintiffs filed a complaint in the Third Judicial District Court asserting that Massachusetts Mutual Life Insurance Company, Massachusetts Mutual agents Gary D. Henderson and Steven G. Sholy, and the UDA are liable for the cancellation of their health insurance.

The complaint alleged that in 1975, the UDA entered into an agreement with Blue Cross whereby the UDA agreed to endorse Blue Cross's health insurance plan and Blue Cross agreed to insure all UDA members regardless of any preexisting illnesses or disabilities. In July of 1987, the UDA cancelled its endorsement of Blue Cross and began encouraging UDA members to obtain health insurance from Massachusetts Mutual. When Blue Cross discovered that the UDA no longer endorsed its health insurance, it notified UDA members that their benefits would terminate. Thereafter, plaintiffs applied for coverage under Massachusetts Mutual's health plan, but coverage was denied due to serious illnesses and physical impairments.

The named defendants answered the complaint, and discovery procedures were commenced. On November 2, 1988, plaintiffs amended their complaint, joining Blue Cross as a defendant. On November 22, 1988, Blue Cross answered the complaint, raising seventeen defenses but making no mention of the existence of an arbitration agreement. On this date, Blue Cross also filed cross-claims against the UDA, Massachusetts Mutual, Henderson, and Sholy, alleging the rights to indemnity, apportionment of liability, and attorney fees.

For the next five months, Blue Cross actively participated in discovery. On December 12, 1988, plaintiffs served a request for production of documents on Blue Cross. On December 21 and 22, Blue Cross participated in the depositions of three Massachusetts Mutual officials. These depositions were conducted in Springfield, Massachusetts. On December 30, 1988, plaintiffs requested a rule 30(b)(6) designation of corporate spokesman from Blue Cross in conjunction with the deposition of Blue Cross's vice president. On January 23, 1989, Blue Cross designated its corporate spokesman. On February 2, 1989, Blue Cross participated in the deposition of its vice president and circulated a stipulation for a protective order among all parties. On February 8, 1989, UDA submitted interrogatories to Blue Cross. On February 24, 1989, Blue Cross participated in the deposition of Massachusetts Mutual general agent, Larry Hanks. On March 9, 1988, plaintiffs served a request for production of documents on Blue Cross. On March 19, 1989, Blue Cross served interrogatories and a request for production of documents on plaintiffs. On March 21, 1989, Massachusetts Mutual answered Blue Cross's cross-claims.

On March 30, 1989, Blue Cross responded to the UDA's first set of interrogatories and raised, for the first time, a right of arbitration. Nevertheless, Blue Cross raised specific objections and provided answers to the interrogatories.

On April 7, 1989, Blue Cross filed a motion to compel arbitration and stay the proceedings. During argument on this motion, plaintiffs asserted that no contractual right of arbitration existed[1] and, in the alternative, that Blue Cross waived its right to compel arbitration. The trial court issued a memorandum decision, ruling that Blue Cross had waived any alleged right of arbitration by "actively participat[ing] in the litigation process" and that such participation has "been to the extent that arbitration would work a substantial prejudice on

---

1. Blue Cross argued that it sent an addendum to the original insurance policy, which contained the arbitration clause, to plaintiffs. Several plaintiffs claimed that they never received the addendum. Because of the court's ruling on the issue of waiver, it did not address whether a contractual right of arbitration existed.

the remaining parties." Pursuant to Utah Code Ann. § 78–31a–19(1), Blue Cross appeals the trial court's denial of its motion to force arbitration.[2]

This case presents an issue of first impression in this court: What standard should be employed in determining whether a party has waived a contractual right of arbitration? Although there is authority to the contrary,[3] several jurisdictions have held that a waiver occurs when the party seeking arbitration substantially participates in litigation, to a point inconsistent with an intent to arbitrate, and this participation results in prejudice to the opposing party.[4] These cases base the requirement of prejudice on a recognition of a public policy in favor of arbitration.[5] Because

this court has also recognized the strong public policy in favor of arbitration "as an approved, practical, and inexpensive means of settling disputes and easing court congestion," [6] it is appropriate to look to these jurisdictions for guidance.

At first glance, the cases that apply this approach appear to reach disparate results.[7] However, closer examination reveals that the main reason for the discrepancies lies not in inconsistent application of the test, but rather, in the fact that the finding of both substantial participation and prejudice are factual determinations.[8] Therefore, results vary, depending on the facts presented in a particular case.

Indeed, while there is some conflict in the case law,[9] most courts consistently ap-

---

**2.** Utah Code Ann. § 78–31a–19(1) provides, "An appeal may be taken by any aggrieved party as provided by law for appeals on civil actions from any court order: (1) denying a motion to compel arbitration." For cases holding that there is a right to a direct appeal from a denial of a motion denying arbitration when a statute or rule expressly authorizes an appeal, see David B. Harrison, Annotation, *Appealability— Court Arbitration Order,* 6 A.L.R.4th 652, 675–78 (1981).

**3.** *See, e.g., City of Niagara Falls v. Rudolph,* 91 A.D.2d 817, 458 N.Y.S.2d 97, 98 (1982); *De Sapio v. Kohlmeyer,* 35 N.Y.2d 402, 362 N.Y.S.2d 843, 846, 321 N.E.2d 770, 772 (1974).

**4.** *See, e.g., Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 806 F.2d 291, 293 (1st Cir.1986); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1158 (5th Cir.1986); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir. 1985); *Sweater Bee by Banff v. Manhattan Indus.,* 754 F.2d 457, 463 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *Reid Burton Constr. v. Carpenters Dist. Council,* 614 F.2d 698, 702 (10th Cir.1980); *J & S Constr. Co. v. Travelers Indem. Co.,* 520 F.2d 809, 809–10 (1st Cir.1975); *Keating v. Superior Court of Alameda County,* 31 Cal.3d 584, 183 Cal.Rptr. 360, 372–73, 645 P.2d 1192, 1204–05 (1982), *appeal dismissed in part,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Board of Educ. Taos Mun. Schools v. The Architects,* 103 N.M. 462, 709 P.2d 184, 185 (1985); *Wood v. Millers Nat'l Ins.,* 96 N.M. 525, 632 P.2d 1163, 1165 (1981); *United Nuclear Corp. v. General Atomic Co.,* 93 N.M. 105, 597 P.2d 290, 300, *cert. denied,* 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979).

**5.** *See, e.g., Page,* 806 F.2d at 293; *Rush,* 779 F.2d at 887; *Sweater Bee by Banff,* 754 F.2d at 461; *Reid Burton Constr.,* 614 F.2d at 702; *J & S Constr. Co.,* 520 F.2d at 810; *Board of Educ.*

*Taos Mun. Schools,* 709 P.2d at 185; *United Nuclear Corp.,* 597 P.2d at 299.

**6.** *Robinson & Wells, P.C. v. Warren,* 669 P.2d 844, 846 (Utah 1983); *see also Lindon City v. Engineers Constr. Co.,* 636 P.2d 1070, 1073 (Utah 1981); *Giannopulos v. Pappas,* 15 P.2d 353, 356 (Utah 1932).

**7.** In *Bernalillo County Medical Center Employees' Association v. Cancelosi,* 92 N.M. 307, 587 P.2d 960, 962 (1978), the New Mexico Supreme Court stated that an "extensive and brutally diverse body of law exists as to at what stage of the court proceedings waiver may be presented and determined."

**8.** *See, e.g., Reid Burton Constr.,* 614 F.2d at 702 ("[Waiver] depends upon the facts of each case."); *Burton–Dixie Corp. v. Timothy McCarthy Constr. Co.,* 436 F.2d 405, 408 (5th Cir.1971) ("[Waiver] depends upon the facts of each case."); *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1057, 1059 (E.D.N.Y.1975) ("[Waiver turns] on all the facts of the case."); *Keating,* 183 Cal.Rptr. at 372, 645 P.2d at 1204 ("[T]he question of waiver is one of fact."); *Doers v. Golden Gate Bridge,* 23 Cal.3d 180, 151 Cal.Rptr. 837, 839, 588 P.2d 1261, 1263 (1979) ("Waiver of a contractual right to arbitration is ordinarily a question of fact."); *Board of Educ. Taos Mun. Schools,* 709 P.2d at 185 ("[Waiver] depends on the facts of each case."); *United Nuclear Corp.,* 597 P.2d at 300 ("The question should be determined by the trier of facts based on the evidence in each case.").

**9.** *Compare Wood,* 632 P.2d at 1166 (arbitration waived when right asserted after adverse ruling on a motion to dismiss) *with Rush,* 779 F.2d at 888 (filing motion to dismiss not inconsistent

ply the same legal principles. The party claiming waiver has the burden of establishing substantial participation and prejudice.[10] While the party seeking arbitration must participate in the litigation to a point inconsistent with arbitration, once this point has been reached, the determination of whether waiver has occurred rests solely on a finding of prejudice.[11] Furthermore, the prejudice must result from the delay in the assertion of the right to arbitrate, not from factors that are inherent in arbitration itself, such as the severance of a claim or limitations on remedies.[12]

Though the cases consistently apply these principles, there is some conflict concerning what particular facts are sufficient to support a finding of prejudice.[13] However, there is general agreement concerning the prejudicial nature of certain factual situations. Courts have recognized that prejudice can occur if a party gains an advantage in arbitration through participation in pretrial procedures.[14] Courts have also stated that prejudice exists when the party seeking arbitration is attempting to forum-shop after "the judicial waters [have] ... been tested."[15] In addition, prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of expenses that arbitration is designed to alleviate, such as the expense of preparing to argue important pretrial motions[16] or the expense of conducting discovery procedures that are not available in arbitration.[17] The finding of prejudice, however, has never been linked to any specific type of harm.

■ The general approach used in these cases is consistent with our case law dealing with arbitration.[18] Mere delay should not result in a waiver of a method of dispute resolution that public policy clearly

with intent to arbitrate). *See also infra* notes 17 and 20.

10. *See, e.g., Page,* 806 F.2d at 293–94; *Price,* 791 F.2d at 1158; *Keating,* 183 Cal.Rptr. at 372, 645 P.2d at 1204; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 185; *United Nuclear Corp.,* 597 P.2d at 300.

11. *See, e.g., Page,* 806 F.2d at 293; *Rush,* 779 F.2d at 887; *Sweater Bee by Banff,* 754 F.2d at 461; *J & S Constr. Co.,* 520 F.2d at 810; *Keating,* 183 Cal.Rptr. at 372, 645 P.2d at 1204; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 185; *United Nuclear Corp.,* 597 P.2d at 300.

12. *See Rush,* 779 F.2d at 890; *Sweater Bee by Banff,* 754 F.2d at 463.

13. See *United Nuclear Corp.,* 597 P.2d at 299, where the New Mexico Supreme Court stated, "[T]here is disagreement from case to case as to what set of facts will justify a holding that a party has waived his rights to arbitration." *See also infra* note 17.

14. *See, e.g., Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968); *Liggett & Myers Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047–48 (S.D.N.Y.1974); *Board of Educ. Taos Mun. Schools,* 709 P.2d at 186.

15. *Wood,* 632 F.2d at 1165; *see also Jones Motor Co. v. Chauffeurs,* 671 F.2d 38, 43 (1st Cir.), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982).

16. *See, e.g., Price,* 791 F.2d at 1160; *Weight Watchers of Quebec Ltd.,* 398 F.Supp. at 1061;

*Board of Educ. Taos Mun. Schools,* 709 P.2d at 186.

17. *See, e.g., Price,* 791 F.2d at 1160; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 186; *see also Rush,* 779 F.2d at 889. However, no prejudice results if the discovery relates to nonarbitrable claims which will be severed and separately litigated, *see, e.g., Rush,* 779 F.2d at 889; *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 642 (7th Cir.1981), and there is some conflict concerning the prejudicial nature of the initial stages of discovery. *Compare Price,* 791 F.2d at 1159–60 (discovery initiated by party claiming waiver should be considered when determining prejudice) *and Board of Educ. Taos Mun. Schools,* 709 P.2d at 185–86 (initial stages of discovery found to be prejudicial because party seeking arbitration has both benefited from discovery and forced opposing party to undergo expense) *with Sweater Bee by Banff,* 754 F.2d at 464 (no prejudice from discovery because discovery can be used in arbitration and additional discovery can be ordered) *and Keating,* 645 P.2d at 1206 (no prejudice from discovery because court ordered party seeking arbitration to cease discovery or extend equal discovery to party claiming waiver). While it is clear that there is disagreement over the prejudicial nature of discovery, it is important to note that factual differences—i.e., size and complexity of the case, degree of discovery available under the particular arbitration contract, and degree of discovery available under the appropriate jurisdiction's arbitration statute—may explain some of the discrepancies.

18. *See supra* note 6.

favors. However, there is an affirmative duty to enforce contractual rights;[19] it is not the policy of this court to allow a party to suffer prejudice because an opposing party has failed to timely assert a contractual right. We therefore adopt the principle that waiver of a right of arbitration must be based on both a finding of participation in litigation to a point inconsistent with the intent to arbitrate and a finding of prejudice. As noted above, both prongs of this test turn on the facts of the individual case. Furthermore, consistent with the policy considerations, any real detriment is sufficient to support a finding of prejudice.

■ It is also to be observed that there is some confusion concerning the applicable standard of review of a trial court's ruling that a party has waived the right to arbitrate.[20] We are of the view that the requirements that a ruling of waiver must rest on findings of substantial participation and prejudice, that the prejudice must relate to the delay in the assertion of the right to arbitrate, and that the prejudice be of such a nature that the party opposing arbitration suffers some real harm are legal standards. Whether the trial court employed the proper standards presents a legal question which is reviewed for correctness.[21] However, the finding of the existence of substantial participation and the finding of the existence of prejudice are factual in nature.[22] Therefore, the existence of these factors should be reviewed as factual determinations.[23]

A reading of the trial court's memorandum decision reveals that the court employed the proper legal standard and based its ruling on the findings of substantial participation and prejudice.[24] Since the underlying facts are not in dispute, the dispositive issue is whether there is sufficient support in the record to uphold the trial court's findings.

■ The record clearly supports the finding that Blue Cross participated in the litigation to a point inconsistent with arbitration. Before Blue Cross moved to compel arbitration, it filed an answer, filed a cross-claim, participated in discovery for five months, and reviewed the discovery that had already taken place prior to its entrance into the case. These actions clearly manifest an intent to proceed to trial.

■ The record also supports the finding of prejudice. The prejudice is apparent from Blue Cross's participation in discovery viewed in conjunction with the fact that there are multiple defendants in the case. It is clear from its cross-claim that part of Blue Cross's defense is that Massa-

---

**19.** *See Jones Motor Co.,* 671 F.2d at 42.

**20.** *See Price,* 791 F.2d at 1159 ("It appears to us that a finding that a party has waived its right to arbitration is a legal conclusion subject to our plenary review, *but* that the findings upon which the conclusion is based are predicated questions of fact, which may not be overturned unless clearly erroneous." (emphasis in original)); *Shinto Shipping Co. v. Fibrex & Shipping Co.,* 572 F.2d 1328, 1331 (9th Cir.1978) ("We must uphold the district court's decision unless we find an abuse of discretion."); *Southwest Indust. Import & Export, Inc. v. Wilmod Co.,* 524 F.2d 468, 470 n. 3 (5th Cir.1975) ("We consider the question of waiver to be a conclusion of law not subject to the structures of limited review dictated by F.R.Civ.P. 52(a) as to factual findings of the Trial Court."); *Burton–Dixie Corp.,* 436 F.2d at 408 ("The question depends upon the facts of each case and usually must be determined by the trier of facts.").

**21.** *See, e.g., Creer v. Valley Bank & Trust,* 770 P.2d 113, 114 (Utah 1988); *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

**22.** *See, e.g., Reid Burton Constr.,* 614 F.2d at 702; *Burton–Dixie Corp.,* 436 F.2d at 408; *Weight Watchers,* 398 F.Supp. at 1059; *Keating,* 183 Cal.Rptr. at 372, 645 P.2d at 1204; *Doers,* 151 Cal.Rptr. at 839, 588 P.2d at 1263; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 185; *United Nuclear Corp.,* 597 P.2d at 300.

**23.** *See, e.g., Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989); *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899 (Utah 1989); Utah R.Civ.P. 52(a); *see also Reid Burton Constr.,* 614 F.2d at 702; *Burton–Dixie Corp.,* 436 F.2d at 408; *Weight Watchers,* 398 F.Supp. at 1059; *Keating,* 183 Cal.Rptr. at 372, 645 P.2d at 1204; *Doers,* 151 Cal.Rptr. at 839, 588 P.2d at 1263; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 185; *United Nuclear Corp.,* 597 P.2d at 300.

**24.** Although the trial court did not make separate findings of fact, memorandum decisions may be regarded as findings of fact. *Thomas v. Thomas,* 569 P.2d 1119, 1121 (Utah 1977).

chusetts Mutual is responsible for any alleged injury suffered by plaintiffs. Because of the delay in the assertion of the right of arbitration, Blue Cross was able to participate in extensive discovery procedures that relate to Massachusetts Mutual's liability and to review the discovery which had already taken place. The information learned in this process could now be used in arbitration to the detriment of plaintiffs.

It must also be remembered that, as Blue Cross points out in its brief, there is only a limited degree of discovery available in arbitration,[25] and at the time of the motion to compel, the discovery relating to Massachusetts Mutual's liability was far more advanced than was the discovery relating to Blue Cross's liability. Blue Cross therefore obtained a benefit from its delay in the assertion of the right to arbitrate that would not have been available had Blue Cross timely moved to stay the proceedings and compel arbitration.[26]

The finding of prejudice is also supported by the expense that plaintiffs undertook in conducting discovery into Blue Cross's liability and in preparing to respond to Blue Cross's discovery request.[27] The policies favoring arbitration are largely defeated when the right of arbitration is not raised until an opposing party has undertaken much of the expense necessary to prepare a case for trial.

Given these facts, the trial court's findings that Blue Cross participated in the litigation to a point inconsistent with arbitration and that this participation prejudiced plaintiffs are supported by the record.

Affirmed.

STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice: (Concurring and Dissenting).

I concur with the majority's statement of the legal standard for determining whether a party to an agreement has waived a right to demand arbitration: Both substantial participation to a point inconsistent with an intent to arbitrate and prejudice are required. These requirements are consistent with Utah public policy favoring arbitration. Unfortunately, the way the majority applies this standard undermines this declared policy. Without addressing the first of these elements, I find that I cannot agree that the evidence of prejudice is sufficient to support a finding that, as a matter of law, the second element is satisfied.

Regarding the standard of review, I find the majority's position puzzling. The trial court made no factual findings on disputed evidence in determining that the standard

25. The arbitration clause which Blue Cross claims is part of the insurance policy provides that all disputes should be submitted to arbitration under the "rules of the American Arbitration Association." The rule of the American Arbitration Association applicable to discovery provides, *"Consistent with the expedited nature of arbitration,* the arbitrator may ... establish (i) the extent of and schedule for the production of relevant documents and other information." (Emphasis added.)

26. Several cases have observed that waiver can occur in such circumstances. *See, e.g., Carcich,* 389 F.2d at 696; *Liggett & Myers Inc.,* 380 F.Supp. at 1047–48; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 186. Indeed, the facts in *Liggett* are similar to the instant case. *Liggett* is a case involving multiple defendants, claims of contribution, and a contractual right of arbitration between the plaintiff and one of the defendants, who was joined late in the case. In finding that waiver had occurred, the court observed:

[W]ithin that period the [party seeking arbitration] actively participated in the depositions of the parties or witnesses; objected to questions and cross-examined witnesses; examined and made copies of documents; obtained adjournments of scheduled depositions to accommodate his clients; received from [the parties claiming waiver] transcripts of all depositions taken prior to entry into the case [of the party seeking arbitration] as well as exhibits up to that date.... In sum, the movant obtained many benefits from the pretrial discovery process in this lawsuit which would not have been available had they demanded arbitration reasonably after the third-party complaint was served.

*Liggett & Myers Inc.,* 380 F.Supp. at 1047–48.

27. *See, e.g., Price,* 791 F.2d at 1160; *Board of Educ. Taos Mun. Schools,* 709 P.2d at 186; *see also Rush,* 779 F.2d at 889.

for waiver was met, and there was no dispute as to the relevant facts. Therefore, we have no occasion to search for any substantial evidence that might support a trial court's factual finding of prejudice. The trial judge was either correct in concluding that the uncontroverted facts satisfied the legal standard or he was not. There is no room here for the exercise of trial court discretion on this question. Yet the majority seems to apply a "clear error" standard to uphold the trial judge's ruling. This appeal presents a plain question of law. Is the evidence sufficient to support a legal conclusion that both elements of waiver are present? *See Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 806 F.2d 291, 294 (1st Cir.1986). I think not.

I proceed directly to the second element. Neither the majority nor plaintiffs are able to point to any real prejudice resulting from Blue Cross's filing pleadings and participating in this litigation over the four and one-half months between the time it entered an appearance and the time it sought arbitration. And to put this matter in perspective, it must be noted that plaintiffs and defendants other than Blue Cross had been engaged in this litigation for one year before the Blue Cross defendants were made parties.

It is true that Blue Cross filed pleadings, but that fact certainly did not cause legally sufficient prejudice to plaintiffs. As for the discovery that the majority says Blue Cross "actively participated in" in the few months following its being joined as a party, Blue Cross was nothing more than a passive participant in depositions initiated by plaintiffs and directed primarily at Massachusetts Mutual. Respecting other discovery, it is hard to understand how plaintiffs were significantly prejudiced by having Blue Cross produce documents in response to plaintiffs' request for production and answering plaintiffs' interrogatories. And as for Blue Cross's discovery requests directed to plaintiffs, they were never answered and there is no evidence in the record that plaintiffs expended any time or effort on them.

At bottom, all we have here is the passage of close to five months and the almost entirely passive participation of a newly joined party in ongoing litigation. I would hold that the articulated legal standard adopted by the court cannot be satisfied by such circumstances. I would reverse and remand with direction that the Blue Cross arbitration claim be addressed on its merits and that, to the extent an arbitration clause is binding on any of the parties, arbitration be ordered.

HOWE, Associate C.J., concurs in the concurring and dissenting opinion of Justice ZIMMERMAN.