2005 UT 32

**Christine BAKER, Personal Representative of the Estate of Gary Baker, for herself and the other heirs of Gary Baker, Plaintiff and Appellee,**

v.

**Gregory P. STEVENS, M.D.; Richard M. Rosenthal, M.D.; and IHC Health Center–Holladay, Defendants and Appellants.**

No. 20030434.

Supreme Court of Utah.

May 31, 2005.

Craig M. Snyder, Leslie W. Slaugh, Provo, for plaintiff.

Larry R. White, Paul D. Van Komen, Brian P. Miller, Kenneth L. Reich, Salt Lake City, for defendants.

Douglas G. Mortensen, Salt Lake City, and Ned Miltenberg, Washington, D.C., for amicus Utah Trial Lawyers Ass'n.

Elliott J. Williams, Kurt M. Frankenburg, Carolyn S. Jensen, R. Chet Loftis, Salt Lake City, for amicus Utah Medical Ass'n.

PARRISH, Justice:

¶ 1 Christine Baker ("Christine") sued doctors Richard Rosenthal and Gregory Stevens (the "doctors"), along with the IHC Health Center in Holladay ("IHC") where Dr. Stevens works, to recover damages for the wrongful death of her husband, Gary Baker ("Gary"). Before his death, Gary had entered into an arbitration agreement (the "agreement") with Dr. Rosenthal. Relying on that agreement, the doctors and IHC moved the district court to compel Christine to arbitrate her wrongful death claim. The district court denied that motion, and the doctors and IHC filed this appeal. While this appeal was pending, however, the parties conducted discovery, and Dr. Rosenthal successfully sought summary judgment in the district court on Christine's claim against him.

¶ 2 Christine filed a suggestion of mootness, arguing that Dr. Rosenthal's dismissal from the underlying action rendered this appeal moot. She reasoned that Dr. Rosenthal was no longer a party to the underlying action and that the remaining defendants' claim to arbitration was based solely on their status as beneficiaries of Dr. Rosenthal's ar-

bitration agreement with Gary. We conclude that Dr. Rosenthal's summary judgment did not render this appeal moot, but rather effected a waiver of his right to arbitrate. We therefore affirm the district court on those grounds.

## BACKGROUND

¶ 3 Gary was receiving treatment from Dr. Stevens for a variety of maladies when Dr. Stevens referred Gary to Dr. Rosenthal. Prior to Gary's treatment, Gary and Dr. Rosenthal entered into the agreement, which required Gary "to submit to binding arbitration all disputes and claims for damages of any kind for injuries and losses arising from the medical care" rendered by Dr. Rosenthal. The agreement also purported to "bind all persons whose claims for injuries and losses arise out of medical care" Dr. Rosenthal provided. Seven days after signing the agreement, Gary died.

¶ 4 Gary's widow, Christine, acting as the personal representative of Gary's estate, brought a wrongful death action against the doctors. Her complaint alleged that the doctors' malpractice had proximately caused her husband's death. She also sought to recover against IHC under theories of vicarious liability and respondeat superior.

¶ 5 Relying on Utah Code section 78–31a–4 (2002),[1] Dr. Rosenthal moved to stay the proceedings and to compel Christine to arbitrate her wrongful death claim against him pursuant to his agreement with Gary. Though not parties to the agreement, Dr. Stevens and IHC also moved to compel Christine to arbitrate her claim, relying on a provision in the agreement allowing "any person or entity that would otherwise be a proper additional party in a court action and which agrees to be bound by the arbitration decision" to participate in the arbitration. Christine opposed the motions seeking to compel arbitration, and the district court

ruled in her favor, holding that Christine's wrongful death claim, which was separate from Gary's underlying claim for personal injuries, was not subject to the arbitration agreement. Although the doctors and IHC appealed the district court's determination,[2] all the parties agreed to pursue discovery while the appeal was pending.

¶ 6 After oral argument, while the appeal was under advisement, Dr. Rosenthal moved the district court for summary judgment on Christine's wrongful death claim. Dr. Rosenthal argued that Christine had failed to produce expert testimony regarding the professional standard of care to which he should be held. The district court granted Dr. Rosenthal's motion for summary judgment and dismissed him from the underlying case. Christine argues that Dr. Rosenthal's dismissal renders this appeal moot. Dr. Rosenthal disagrees, arguing that the case is not moot because "[t]he time for appeal of the . . . summary judgment has not run." Dr. Stevens and IHC initially argued that the appeal was not moot because they were entitled to enforce the arbitration agreement regardless of whether Dr. Rosenthal remained a party. Subsequently, however, Dr. Stevens and IHC settled with Christine, and she dismissed her claims against them. Accordingly, we restrict our discussion to Christine's claim against Dr. Rosenthal.

¶ 7 We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002). We review the district court's denial of Dr. Rosenthal's motion to compel arbitration for correctness. *Sosa v. Paulos,* 924 P.2d 357, 360 (Utah 1996).

## ANALYSIS

¶ 8 Dr. Rosenthal seeks to compel arbitration of Christine's wrongful death claim pursuant to his agreement with Gary. Christine seeks to avoid application of the agreement,

---

1. Effective May 15, 2003, chapter 31a was repealed and replaced with a new chapter 31a. Act of Mar. 2, 2002, ch. 326, § 33, 2002 Utah Laws 1581; Utah Code Ann. §§ 78–31a–101 to –131 (2002). All references to chapter 31a in this opinion will be to the repealed version, as that was the version in effect at the time of the relevant events.

2. The Utah Medical Association submitted an amicus brief to this court in support of the doctors and IHC, and the Utah Trial Lawyers Association in turn submitted an amicus brief in support of Christine.

arguing that the agreement is entirely invalid and, in any event, that it does not apply to her wrongful death claim. She also asserts that the summary judgment in Dr. Rosenthal's favor rendered this appeal moot. Although we conclude that the summary judgment entered in favor of Dr. Rosenthal does not render this appeal moot, we hold that Dr. Rosenthal's decision to seek summary judgment from the district court constituted a waiver of his right to arbitrate.

## I. IS THIS APPEAL MOOT?

¶ 9 We first address whether Dr. Rosenthal's summary judgment has rendered this appeal moot. "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Richards v. Baum*, 914 P.2d 719, 720 (Utah 1996) (internal quotations omitted). We do not address moot claims on appeal. *See Black v. Allstate Ins. Co.*, 2004 UT 66, ¶ 29, 100 P.3d 1163.

¶ 10 We conclude that this appeal is not moot. This appeal raised the question of whether Dr. Rosenthal could compel arbitration of Christine's wrongful death claim; Dr. Rosenthal asserted that he could, while Christine asserted he could not. That issue still awaits decision. Because the time for appealing the summary judgment has yet to run, the judgment is not final. In the event that Christine is successful in challenging the summary judgment on appeal, Dr. Rosenthal will presumably still seek to compel arbitration. Accordingly, this appeal "has [not] lost its ability to provide judicial relief to the litigants," *Shipman v. Evans*, 2004 UT 44, ¶ 37, 100 P.3d 1151, and is not, therefore, moot.

## II. DOES DR. ROSENTHAL'S DECISION TO SEEK SUMMARY JUDGMENT IN THE DISTRICT COURT CONSTITUTE A WAIVER OF HIS CLAIMED RIGHT TO ARBITRATE?

¶ 11 Although Dr. Rosenthal's summary judgment has not rendered this appeal moot, we conclude that Dr. Rosenthal's decision to seek summary judgment in the district court constituted a waiver of his claimed right to arbitrate. Our holding in this regard requires us to affirm the district court's denial of Dr. Rosenthal's motion to compel arbitration, even though the district court has not passed on the waiver issue and the parties have not raised that argument either in the district court or before us on appeal. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158.

¶ 12 We have recognized that arbitration has much to recommend it, *see Buckner v. Kennard*, 2004 UT 78, ¶ 17, 99 P.3d 842, and have accordingly noted "a strong presumption against waiver of the right to arbitrate," *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 24, 40 P.3d 599. Consequently, a "waiver of the right to arbitrate must be intentional" and may be inferred "only if the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate." *Id.*

¶ 13 We have constructed a two-part test for determining whether a party has waived its right to arbitrate by participating in litigation of issues subject to arbitration. First, the party seeking arbitration must have "substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate." *Cedar Surgery Ctr., L.L.C. v. Bonelli*, 2004 UT 58, ¶ 14, 96 P.3d 911. This prong is designed to "evaluate whether the party asserting the right to arbitrate has clearly manifested an intent to waive its right to arbitration." *Id.* at ¶ 16. To make that evaluation, courts "look at the actions of the party seeking arbitration, and . . . determine 'whether those actions evidence an intent to submit to the jurisdiction of the court and pursue redress through litigation.'" *Id.* (quoting *Cent. Fla. Invs.*, 2002 UT 3 at ¶ 26, 40 P.3d 599). Second, the party's participation in the litigation must have "resulted in prejudice to the opposing party." *Id.* at ¶ 14; *see also Cent. Fla. Invs.*, 2002 UT 3 at ¶¶ 22, 24, 40 P.3d 599; *Pledger v. Gillespie*, 1999 UT 54, ¶ 19, 982 P.2d 572; *Chandler v. Blue Cross Blue Shield*, 833 P.2d 356, 360 (Utah 1992).

¶ 14 We have noted that "the finding of the existence of substantial participation and the finding of the existence of prejudice are factual in nature" and therefore "should be reviewed as factual determinations." *Chandler,* 833 P.2d at 360. Accordingly, in a case like this, where the district court has made no findings of fact on those issues, we ordinarily would remand the case to the district court with instructions to enter such findings. This case is unique, however, because the docket in the district court, as well as Dr. Rosenthal's opposition to Christine's suggestion of mootness, unequivocally reveal the very fact that we consider fatal to Dr. Rosenthal's efforts to compel arbitration: Dr. Rosenthal sought summary judgment in the district court.

¶ 15 Given this undisputed fact, we think it evident that Dr. Rosenthal waived his right to arbitrate.[3] By seeking summary judgment from the district court, Dr. Rosenthal litigated the very issues he originally sought to arbitrate. In short, he proceeded as if he had not even appealed the district court's denial of his motion to compel arbitration. Dr. Rosenthal would have no reason to seek summary judgment unless he intended it to dispose of Christine's claim against him. We have no doubt that filing a motion for summary judgment, as Dr. Rosenthal did, qualifies as substantial participation "in the underlying litigation to a point inconsistent with the intent to arbitrate," *Cedar Surgery Ctr.,* 2004 UT 58 at ¶ 14, 96 P.3d 911, and that Dr.

Rosenthal clearly intended " 'to submit to the jurisdiction of the court and pursue redress through litigation,' " *id.* at ¶ 16 (quoting *Cent. Fla. Invs.,* 2002 UT 3 at ¶ 26, 40 P.3d 599); *see also Williams Indus. v. Earth Dev. Sys. Corp.,* 110 S.W.3d 131, 135 (Tex.App.2003) (noting that "moving for summary judgment" is an example of "[s]ubstantially invoking the judicial process").

¶ 16 Furthermore, it is apparent that Dr. Rosenthal's summary judgment has prejudiced Christine, as it was a motion on the merits of the very claim he sought to arbitrate.[4] *See Danny's Constr. Co. v. Birdair, Inc.,* 136 F.Supp.2d 134, 144 (W.D.N.Y.2000) (noting that "sufficient prejudice exists where a party against whom waiver is asserted ... makes motions going to the merits of an adversary's claims" (internal quotations omitted)). Though the summary judgment is not yet final, Christine has, for all intents and purposes, lost her claim against Dr. Rosenthal. While she may challenge it on appeal, she must incur expenses she would have avoided had Dr. Rosenthal confined his efforts to arbitration. She is therefore prejudiced.[5] Additionally, allowing arbitration following the filing of a dispositive motion in litigation would give the moving party two bites at the apple. Under these circumstances, we have no difficulty finding prejudice.

¶ 17 We conclude that Dr. Rosenthal waived his right to arbitrate and, along with

---

3. We are cognizant of Dr. Rosenthal's comment, in his opposition to Christine's suggestion of mootness, that the agreement between the parties allowing for discovery also allowed him to seek summary judgment at the close of discovery. Even if that is true, we do not think Dr. Rosenthal can justify his conduct simply because it was premised on an agreement with the other parties to the litigation. If the agreement of the parties indeed allowed Dr. Rosenthal to seek summary judgment from the district court, the very agreement itself was "inconsistent with the intent to arbitrate." *Cedar Surgery Ctr.,* 2004 UT 58 at ¶ 14, 96 P.3d 911.

4. We do not consider whether Dr. Rosenthal's participation in discovery was further evidence of his waiver. There is some disagreement as to whether participating in discovery rises to the level of prejudice necessary to justify a waiver. *Chandler,* 833 P.2d at 359 n. 17. We need not answer that question here, though, because Dr.

Rosenthal's successful procurement of summary judgment demonstrates sufficient intent and prejudice to constitute a waiver.

5. Most of the cases dealing with waiver of the right to arbitrate address situations in which the party seeking to compel arbitration did so after some delay, thereby giving rise to a claim of prejudice. *See Pledger,* 1999 UT 54 at ¶ 22, 982 P.2d 572; *Danny's Constr. Co.,* 136 F.Supp.2d at 143–44. In those cases, that party allegedly substantially participated in the underlying litigation before seeking arbitration, not after, as Dr. Rosenthal did in this case. However, if the district court finds that the delay in question constitutes prejudicial, substantial participation in the underlying litigation, we think it makes no difference that the delay came before or after the motion to compel arbitration, since either situation is "inconsistent with the intent to arbitrate." *Cedar Surgery Ctr.,* 2004 UT 58 at ¶ 14, 96 P.3d 911.

it, his ability to compel Christine to arbitrate her claim against him. This conclusion provides an independent basis on which to affirm the trial court's denial of Dr. Rosenthal's motion to compel arbitration and obviates the need for us to discuss the parties' remaining claims.

## CONCLUSION

¶ 18 We affirm the district court's denial of Dr. Rosenthal's motion to compel Christine to arbitrate her wrongful death claim on the alternate ground that Dr. Rosenthal waived his right to arbitrate.

¶ 19 Associate Chief Justice WILKINS, Justice DURRANT, Justice NEHRING, and Judge DEVER concur in Justice PARRISH'S opinion.

¶ 20 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Judge L.A. DEVER sat.