**2024 UT App 115**

## THE UTAH COURT OF APPEALS

PAUL HARDMAN AND JON HARDMAN,
Appellants,
*v.*
DAWNA LYN CAMPBELL, MARCIA JACOBS, HEBER HARDMAN, AND
SHIRLEY HARDMAN,
Appellees.

Opinion
No. 20220609-CA
Filed August 8, 2024

First District Court, Logan Department
The Honorable Spencer D. Walsh
No. 210100259

Benjamin K. Lusty, Cami Schiel, Erin E. Byington,
and Samuel A. Goble, Attorneys for Appellants

Jonathan E. Jenkins and Dalton J. Smuin, Attorneys
for Appellees Marcia Jacobs
and Dawna Lyn Campbell

Gary N. Anderson, R. Christian Hansen, and S. Drew
Parkinson, Attorneys for Appellees Heber Hardman
and Shirley Hardman

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and JOHN D. LUTHY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Each party to this case owns a share of a family-owned company, Hardman Properties, LLC (the LLC), which owns several parcels of real property in northern Utah. The LLC was allegedly dissolved in August 2021, after which brothers Paul and Jon Hardman (collectively, Brothers) sued their sisters Dawna

Lyn Campbell and Marcia Jacobs (collectively, Sisters) and their parents Heber and Shirley Hardman (collectively, Parents)[1] to prevent the LLC's dissolution and the distribution of the LLC's properties. Ninety-three days after their complaint had been filed and their request for a temporary restraining order (TRO) had been litigated, Brothers filed a motion to compel arbitration as required by the LLC's operating agreement. The district court denied the motion, ruling that by filing the complaint and TRO, filing mandatory initial disclosures, and litigating the TRO, Brothers had substantially participated in litigation to the prejudice of Sisters and Parents, thereby waiving their right to arbitrate. Brothers argue on appeal that seeking to prevent the distribution of the LLC's properties before arbitrating the dissolution dispute did not demonstrate an intent to litigate to a point inconsistent with an intent to arbitrate nor did it prejudice Sisters and Parents and so the district court erred in its determination. We conclude that by filing a complaint and TRO to keep the status quo pending arbitration, all the while repeatedly asserting the right to arbitrate and seeking to compel arbitration within three months of filing the complaint, Brothers did not substantially participate in litigation and waive the right to arbitrate. We therefore reverse the district court's decision.

BACKGROUND

¶2      The LLC owns thirty-two parcels of land in Cache County, Utah. The LLC's membership consists of Brothers (Jon owning 23%, Paul owning 23%), Sisters (Dawna owning 23%, Marcia owning 23%), and Parents (Heber and Shirley owning 8% jointly).

---

1. Heber passed away during these proceedings. For simplicity, we will continue to refer to Heber and Shirley collectively as Parents. Moreover, because several of the parties share a last name, we refer to the parties by their first names and intend no disrespect by the apparent informality.

The LLC was created in 1996 by Parents "for their own benefit and the benefit of their children." The LLC operating agreement, signed in March 1996, identified LLC management and members and set out in detail the relative relationships and ownership interests in the LLC among the members.

¶3    The overarching purpose behind the LLC was to create a family business wherein Parents, for tax and estate reasons, could effectuate a series of property and asset transfers to their children in lieu of them receiving a direct inheritance from Parents upon their passing. The operating agreement contains an arbitration clause, which provides in pertinent part:

> <u>Arbitration</u>. No civil action concerning any dispute arising under this Agreement shall be instituted before any court. Instead, all such disputes—and all voting deadlocks—shall be submitted to final and binding arbitration at Logan, Utah. Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association before a single arbitrator.

¶4    In early 2021, the family members discussed dissolving the LLC in an effort to "maintain a good relationship between [the] children, which had . . . begun to unravel due to the children's involvement in the [LLC]." Parents moved forward with the dissolution, and it was allegedly completed in August 2021. But Brothers disagreed with the purported dissolution and final distribution of properties and filed suit in the district court on September 7, 2021, asserting breach of the LLC's operating agreement, promissory estoppel, breach of fiduciary duties, and unjust enrichment. In their complaint, Brothers did not affirmatively request arbitration or even mention the topic of alternative dispute resolution at all. At the same time, however, Brothers moved for an ex parte TRO to stop the sale of the LLC's properties, asserting that the "LLC Operating Agreement

require[d] the parties [to] submit to binding arbitration." Brothers requested that "the court enjoin and restrain any further transfers of the parcels/properties at issue pending resolution of the dispute at Arbitration," and they sought "an injunction to hold the status quo pending Arbitration," arguing that if an injunction was not issued, they would "suffer irreparable harm if any of the LLC parcels [were] sold prior to Arbitration." Brothers also filed and recorded a notice of lis pendens to encumber all thirty-two properties identified in their complaint, plus an additional property owned by Parents in trust. The court granted the TRO on September 24.

¶5 Parents and Sisters timely answered the complaint and asserted counterclaims. Brothers sought an extension of the TRO and entry of a preliminary injunction, which Parents and Sisters opposed. In response to the objections, Brothers reiterated that they were seeking an injunction because the LLC was wrongfully dissolved and "to prevent any further damage to the LLC pending resolution of the case through mediation and, that failing, binding arbitration." The parties produced initial disclosures. Brothers answered Parents' and Sisters' counterclaims and pleaded that the counterclaims were precluded by mandatory arbitration.

¶6 The district court denied Brothers' request to extend the ex parte TRO. It ruled that Brothers had not provided adequate notice to obtain such an order and also that Brothers could not show that they would suffer irreparable harm unless the TRO remained, nor did they demonstrate a substantial likelihood that they would prevail on the merits of their claims. Thereafter, in early December 2021, three months after filing their complaint, Brothers filed a motion to compel arbitration under the terms of the LLC's operating agreement. Parents and Sisters objected to the motion to compel, arguing that Brothers had waived the right to participate in arbitration because they had substantially participated in litigation and because Parents and Sisters would be prejudiced by changing forums at that point in the litigation.

Before the district court resolved Brothers' motion to compel, Parents moved for summary judgment, the parties continued to litigate the removal of the lis pendens remaining on several of the disputed properties, and Parents and Sisters sought attorney fees for what they alleged to be the wrongful filing of the ex parte TRO. Brothers requested a stay on their response to Parents' summary judgment motion and to stay further discovery pending the court's determination of the motion to compel arbitration. But in responding to Parents' and Sisters' motions to release the lis pendens, Brothers included a proposed amended complaint wherein Brothers identified and added more than a dozen new claims they intended to pursue in the litigation.

¶7 The district court heard oral argument in April 2022 on Brothers' motion to compel, Sisters' motion to remove the notice of lis pendens, and Brothers' motion to stay responsive pleadings. In denying Brothers' motion to compel arbitration, the district court determined that Brothers had waived their right to arbitration. Specifically, the court ruled that Brothers' actions in filing a complaint, filing a motion for an ex parte TRO, litigating the TRO, filing answers to counterclaims, and exchanging disclosures showed an intent to submit to the jurisdiction of the court and pursue resolution of the dispute through litigation. Moreover, the court found that Parents and Sisters incurred considerable costs and fees that they would not have incurred had alternative dispute resolution been pursued initially by Brothers. Brothers timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶8 Brothers contend that the district court erred in denying their motion to compel alternative dispute resolution.[2] Our

---

2. As an initial matter, because Brothers' pleading was titled "Motion to Compel Alternative Dispute Resolution" and

(continued…)

analysis begins with a discussion of the correct standard of review to apply to the question of whether Brothers waived their right to arbitration. The determination of the appropriate standard of appellate review for a particular issue is a legal question that we must answer prior to addressing the issue raised on appeal. *See State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096 (stating that the appropriate standard of review for an issue depends on the level of deference the appellate court gives the district court's application of a specific legal doctrine to the facts).

¶9 For the reasons described below, we conclude that the district court's determination that Brothers substantially participated in litigation to a point inconsistent with the right to arbitrate is a legal conclusion we review for correctness. *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 11, 245 P.3d 184.

¶10 We then assess whether Brothers waived their right to arbitration, which requires application of the two-part test from the Utah Supreme Court's decision in *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356 (Utah 1992). We consider whether the district court erred in concluding that Brothers substantially participated in litigation. As part of our consideration of this issue,

---

requested an order requiring the parties to mediate and then proceed to arbitration, Sisters question whether this court has jurisdiction to review the district court's ruling under Utah Code section 78B-11-129(1), which provides that "[a]n appeal may be taken from . . . an order denying a motion to compel arbitration." Our supreme court has recognized that "appellate jurisdiction exists" to hear an appeal concerning the denial of a "motion to compel arbitration." *Pledger v. Gillespie*, 1999 UT 54, ¶ 18, 982 P.2d 572. As the court's ruling below was one that clearly denied Brothers' request to pursue arbitration, we have jurisdiction to hear this appeal.

we determine that the 1996 version of the Utah Arbitration Act applies to resolution of Brothers' motion to compel. And, finally, we will look at whether Brothers' participation in litigation prejudiced Parents and Sisters.

## ANALYSIS

¶11     The Utah Supreme Court first articulated the two-part test for whether a party has waived its right to arbitrate many years ago in *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356 (Utah 1992). In that case, the court stated that "waiver of a right of arbitration must be based on both a finding of participation in litigation to a point inconsistent with the intent to arbitrate and a finding of prejudice." *Id.* at 360.[3] Because policy favors arbitration, "there is also a strong presumption against waiver of the right to arbitrate." *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 24, 40 P.3d 599. "The party claiming waiver has the burden of establishing substantial participation and prejudice." *Id.*

---

3. We note that several years ago in *Mounteer Enterprises, Inc. v. Homeowners Ass'n*, 2018 UT 23, 422 P.3d 809, a non-arbitration case, the Utah Supreme Court observed that "[t]he prejudice requirement is a doctrinal misfit in the law of waiver," and it thus "repudiate[d] [its] prior decisions that speak of prejudice as an element of waiver." *Id*. ¶¶ 33–34. And we further note that in *Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, ¶ 28, n.10, 482 P.3d 831, and in *Livingston v. Finco Holdings Corp*., 2022 UT App 71, ¶ 25, n.7, 513 P.3d 94, this court recognized that whether prejudice still must be shown in arbitration cases remains an open question. As we did in *Turpin* and *Livingston*, because none of the parties has argued that prejudice is no longer an element of the *Chandler* waiver test, and because we do not reach the prejudice question anyway, we assume for purposes of our review that the prejudice prong still applies.

¶12    Before we address the two parts of the *Chandler* test, we must first resolve the parties' dispute over the proper standard of review.

I. Standard of Review

¶13    Parents and Sisters assert that review of the determination that a contractual right to arbitration has been waived presents mixed questions of law and fact and cite several Utah Supreme Court decisions for this proposition. *See Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572 ("[W]hether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations . . . ."). *See also Baker v. Stevens*, 2005 UT 32, ¶ 14, 114 P.3d 580; *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 20, 40 P.3d 599 (same). Sisters acknowledge that in *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, 245 P.3d 184, our supreme court took a different tack and clarified that a challenge to a district court's denial of a motion to compel arbitration is a challenge to "the legal conclusions of the district court based on the undisputed factual record," *id.* ¶ 25, and that this court determined in *Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, 482 P.3d 831, that when evaluation of waiver is based upon undisputed facts and on documents in the record, we review it for correctness, *id.* ¶ 17.

¶14    Sisters argue, however, that while there was no evidentiary hearing held below to examine Brothers' intent, there was extensive litigation, during which the district court conducted multiple hearings with the parties and extensively interacted with them. So, Sisters posit, based on its observations of the parties at those hearings, the court was in a position from which it could observe the attitudes and the positions of the parties and make factual determinations about Brothers' intent that are entitled to deference on appeal.

¶15 Sisters may have a point if this is what had actually happened below. But here, the district court did not make any factual findings about Brothers' intent based upon its observations of the parties at the hearings. The court based its waiver determination on Brothers' litigation activities alone:

> [Brothers'] actions show an intent to submit to the jurisdiction of the [c]ourt and pursue redress through litigation. . . . [They] have filed a Complaint and filed an *Ex Parte* Motion for TRO. [Brothers] also filed for an extension of the TRO. [Brothers'] Complaint is devoid [of] anything informing the [c]ourt or the parties that they were only seeking to file the complaint to avail themselves of the equitable powers of the [c]ourt and seek a *lis pendens* or TRO. [Brothers] then filed Answers to the counterclaims. They participated in fact discovery by issuing initial disclosures. [Brothers] engaged in motion work before the court. These action[s] evidence an intent to submit to the jurisdiction of the district court and pursue redress through litigation.

¶16 As set forth above, our supreme court has determined that factual findings based only on documentary evidence submitted in the context of pleadings and filings merit correctness review. *See id.* We therefore review the district court's determination as to whether Brothers waived their right to arbitration for correctness.

## II. *Chandler* Test

¶17 We turn now to the merits of Brothers' appeal, which requires the application of our supreme court's *Chandler* test. *See Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 360 (Utah 1992). Utah courts have long recognized "a strong policy favoring arbitration," *Edwards v. Carey*, 2017 UT App 73, ¶ 13, 397 P.3d 797, and thus "a strong presumption against waiver of the right to

arbitrate," *Baker v. Stevens*, 2005 UT 32, ¶ 12, 114 P.3d 580 (quotation simplified). "Consequently, a waiver of the right to arbitrate must be intentional and may be inferred only if the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate." *Baker*, 2005 UT 32, ¶ 12 (quotation simplified). A waiver of a right to arbitrate occurs when the party seeking arbitration substantially participates in litigation to a point inconsistent with the right to arbitrate and that participation causes prejudice to the opposing side. *See Chandler*, 833 P.2d at 360.

A.    *Chandler* Test Part I: Substantial Participation in Litigation

¶18    We apply the precedent from our appellate courts to assess what substantial participation in litigation means. We consider especially important whether Brothers' requests of the district court demonstrate an intent to pursue litigation or whether they demonstrate an intent to avoid litigation and a desire to arbitrate. Previously, Utah courts have considered participation in litigation to be inconsistent with the intent to arbitrate when a party who is seeking to compel arbitration chooses to "litigate[] the very issues [they] originally sought to arbitrate," *Baker*, 2005 UT 32, ¶ 15, or when a party chooses to proceed in such a manner that "clearly manifest[s] an intent to proceed to trial," *Smile Inc. Asia Pte. Ltd. v. BriteSmile Mgmt., Inc.*, 2005 UT App 381, ¶ 27, 122 P.3d 654 (quotation simplified), *cert. denied*, 126 P.3d 772 (Utah 2005), rather than a legitimate "desire to arbitrate," *id.* ¶ 26. *See also ABF Freight System, Inc. v. International Bhd. of Teamsters*, 728 F.3d 853, 862 (8th Cir. 2013) ("A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." (quotation simplified)). There are numerous examples of what belies a desire to arbitrate. *See, e.g., Baker*, 2005 UT 32, ¶ 15 (determining waiver where a party sought summary judgment against the opposing party); *Smile Inc.*, 2005 UT App 381, ¶ 27 (holding waiver when the moving party "did not originally intend to have [the] matter arbitrated, but seriously

contemplated it only after" filing numerous motions, participating in discovery, and taking and defending depositions over the course of two years (quotation simplified)).

¶19 Here, Brothers participated in family discussions regarding the dissolution of the LLC in early 2021, and the dissolution allegedly wrapped up in August of that same year. Unhappy with the alleged dissolution and the proposed distribution of the LLC's properties, Brothers filed a complaint in September 2021 and moved ex parte for a TRO to stay the distribution of and any possible sale of the LLC's properties "pending resolution of the dispute at Arbitration." Brothers then filed a motion to compel alternative dispute resolution in December 2021, three months after filing their complaint. The district court concluded that Brothers waived their right to arbitrate by filing a complaint that did not mention an enforceable arbitration agreement, by seeking an ex parte motion for injunctive relief and then litigating the TRO, by filing a notice of lis pendens on all the LLC's properties, by filing answers to Parents' and Sisters' counterclaims, and by exchanging initial disclosures.

¶20 Brothers acknowledge that they filed a complaint with a slew of claims. Brothers also admit that their complaint did not mention the operating agreement's mandatory arbitration clause or explicitly indicate in that filing a desire to arbitrate. And Brothers acknowledge this court's precedent in *Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, 482 P.3d 831, and *Educators Mutual Insurance Ass'n v. Evans*, 2011 UT App 171, 258 P.3d 598, which Parents and Sisters argue are determinative. In these cases, this court held that the filing of a complaint, by itself, evidenced a clear intent to litigate and to waive the right to arbitrate, *see Turpin*, 2021 UT App 12, ¶¶ 20–21; *Educators*, 2011 UT App 171, ¶ 66. But we see material differences between the factual situations in those cases and the facts we have here. First, there was no record evidence and no argument was made in

*Turpin* that the plaintiff submitted her medical malpractice claim to a prelitigation panel or reluctantly filed that claim in district court in order to maintain the status quo pending arbitration. *See* 2021 UT App 12, ¶¶ 21–25. Instead, the plaintiff was seeking judicial resolution of her medical malpractice claim. *Id.* ¶ 21. And in *Educators*, none of the parties sought to compel arbitration after the plaintiff filed its complaint and pursued litigation. *See generally Educators*, 2011 UT App 171, ¶¶ 61–69. Rather, this court reversed the dismissal of the defendant's third-party claims after determining that the district court erred in enforcing the parties' arbitration provision against the defendant when the parties all waived arbitration. *See id.* ¶¶ 65–69; *see also Turpin*, 2021 UT App 12, ¶ 24 ("Absent some outward indication by [the plaintiff] that she was pursuing litigation reluctantly or did not want to waive her right to arbitrate, we see no relevant difference between this case and *Educators* . . . .").

¶21　Admittedly, to let the district court know that they were seeking to maintain the status quo until the dispute over dissolution of the LLC was resolved by arbitration, Brothers' better course would have been to explicitly request arbitration in their complaint. But they argue convincingly that their desire not to waive the right to arbitrate was evidenced by their contemporaneously filed motion for a TRO, which explicitly requested that the court enter an order to preserve the status quo pending arbitration, and that their intent was reiterated when they sought to extend the TRO. We also find persuasive Brothers' assertion that filing a complaint in this circumstance was procedurally necessary because there must be a mechanism for them to stall the imminent sale of irreplaceable properties pending arbitration of their dispute with Parents and Sisters.

¶22　At its core, this is a breach of contract case. And it is undisputed that the LLC's operating agreement, signed in 1996, contains an arbitration requirement for the settling of disputes.

¶23    Unlike the current version of the Utah Arbitration Act, the version of the act in effect in 1996 does not provide for provisional relief or explain how a party can preserve the status quo in an arbitrable dispute pending the appointment of an arbitrator. *See* Utah Code §§ 31a-78-1 to -20 (1996). In fact, it was not until the 2002 revision of the Arbitration Act that the Utah legislature explicitly recognized the availability of provisional remedies. *See id.* § 78-31a-109(1) (2002) ("Before an arbitrator is appointed and is authorized and able to act, the court, upon motion of a party to an arbitration proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action.").

¶24    But that does not mean that Brothers had no way to preserve the status quo pending arbitration of the parties' dispute or that the lack of a specific provisional remedies section in the 1996 version of the Arbitration Act prevented Brothers from seeking injunctive relief. Under our rules of civil procedure, a district court can enjoin a party from taking certain action that would render the arbitration a hollow formality—such as when arbitration is required to resolve a dispute over how to divvy up irreplaceable property and one of those parties plans to sell those very properties before the arbitration. *See* Utah R. Civ. P. 65A(e)(2)–(3) ("A restraining order or preliminary injunction may issue only upon a showing by the applicant that . . . the applicant will suffer irreparable harm unless the order or injunction issues [and] the threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined . . . ."); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053–54 (4th Cir. 1985) ("The arbitration process would be a hollow formality where the arbitral award when rendered could not return the parties substantially to the status quo ante." (quotation simplified)). And here, the parties themselves agreed that they would "be irreparably

damaged if [the operating] agreement is not specifically enforced."

¶25    The parties disagree about which version of the Arbitration Act applies in this case. Though the Utah Supreme Court has acknowledged that the Arbitration Act is procedural rather than substantive, which might otherwise suggest application of the current statute, *see ASC Utah, Inc. v Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 19, 245 P.3d 184, the plain language of the current version of the Arbitration Act makes clear that it applies to only those arbitration agreements "made on or after May 6, 2002, " Utah Code § 78B-11-104(1). The statute also "applies to any agreement to arbitrate made before May 6, 2002, if all the parties to the agreement or to the arbitration proceeding agree on the record." *Id*. § 78B-11-104(2). Thus, although the current version of the Arbitration Act allows for provisional remedies—unlike the 1996 version, which did not—the current version does not apply to the arbitration agreement here because the plain language of the statute directs that it does not apply when the agreement was made prior to 2002 and the parties have not agreed on the record to its application. Accordingly, we determine that the 1996 version of the Arbitration Act applies to this case.

¶26    Given the unavailability of provisional remedies under the 1996 version of the Arbitration Act, the only way Brothers could forestall the imminent sale of the properties was to do as they did—file a complaint and then ask for a restraining order while the parties pursued arbitration. Accordingly, though Brothers initiated this lawsuit, we do not view Brothers' mere filing of mandatory initial disclosures as indicative of an intent to proceed to trial. The timely production of initial disclosures, the answering of Parents' and Sisters' counterclaims, and the response to Sisters' requests for admissions are not voluntary undertakings. Rather, timely compliance with discovery timelines and other aspects of litigation that do not necessarily involve the court do not manifest an intent to waive arbitration. *See Central Fla. Invs., Inc. v. Parkwest*

*Assocs.*, 2002 UT 3, ¶ 29, 40 P.3d 599. As explained by our supreme court to parties in another case, it is as if Brothers were

> to a certain extent, compelled to file these [discovery responses] to comply with the rules of civil procedure. The Utah Rules of Civil Procedure impose[] requirements and deadlines on [parties] to participate . . . in pretrial discovery and in the filing of pretrial motions. If we were to hold that [a party's] participation in the litigation process, particularly discovery, regardless of [their] intent regarding arbitration or the extent of [their] participation in litigation, the result would be that in subsequent cases parties would arguably always waive arbitration in complying with deadlines imposed by the rules governing litigation in the courts.

*Id.* ¶ 32.

¶27    Moreover, the "motion work" the district court found probative of Brothers' intent to waive arbitration included a request that the court stay the responsive briefing on Parents' motion for summary judgment filed after Brothers moved to compel arbitration and a request to stay further discovery pending the court's ruling on the motion to compel. Importantly, these filings do not appear to invoke the authority of the district court to further litigation, to manipulate the legal process to get a second bite at a favorable outcome, or to gather evidence to build Brothers' case in arbitration. Rather, these filings suggest that Brothers did not intend to litigate their claims to conclusion but instead intended to maintain the status quo pending arbitration.

¶28    In sum, we determine that the district court erred in concluding that Brothers substantially participated in litigation. By filing a complaint, seeking injunctive relief, answering

counterclaims, and participating in discovery, Brothers did not demonstrate an intent to waive arbitration in this matter.

B.     *Chandler* Test Part II: Prejudice

¶29     Assuming we need to reach this issue, because we conclude Brothers did not participate in litigation to a point inconsistent with the intent to arbitrate, we need not consider whether Parents and Sisters were prejudiced due to the filing of Brothers' complaint and participation in the litigation process. Under *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356 (Utah 1992), both parts of the test must be met to establish waiver. *See id.* at 358, 360. Since both parts of the test cannot be met here, we conclude that Brothers did not waive their right to arbitrate the family dispute with Parents and Sisters.

CONCLUSION

¶30     The LLC members agreed to arbitrate any dispute arising under the LLC's operating agreement. Brothers did not waive their right to arbitrate the alleged dissolution of the LLC. As Brothers disagreed with the LLC dissolution and sought to arbitrate under the terms of the operating agreement, the district court erred when it found that Brothers participated in litigation to a point inconsistent with the intent to arbitrate. Therefore, we reverse the district court's denial of the motion to compel arbitration and remand this case for proceedings consistent with this opinion.

———————